IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TODD CONSTRUCTION, L.P. f/k/a<br>TODD CONSTRUCTION CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-324C<br>(Judge Edward J. Damich) |

DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, respectfully requests this Court to dismiss the complaint of plaintiff Todd Construction, L.P. for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of this Court ("RCFC"), or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6).

QUESTION PRESENTED

1. Whether this Court lacks subject matter jurisdiction to adjudicate Todd Construction's claims regarding its performance evaluations, which are not cognizable under the Tucker Act, 28 U.S.C. § 1491(a).

2. Whether Todd Construction has failed to state a claim upon which relief can be granted.

STATEMENT OF FACTS[1]

According to its complaint, Todd Construction received two task orders from the United States for projects on the Seymour Johnson Air Force Base, located in North Carolina. Compl. ¶

[1] For the sole purpose of this motion, we will treat the allegations in Todd Construction's complaint as true.

4. According to Todd Construction, the Army Corps of Engineers ("Corps") evaluated Todd Construction's performance upon these projects as "unsatisfactory" in the proposed final evaluations issued on March 26, 2006, in connection with these projects, and sent the evaluations to Todd Construction for comment. Compl. ¶ 5. Todd Construction alleges that it timely submitted comments regarding these proposed final evaluations. Id. It further alleges that on July 23, 2006, the Corps issued final evaluations upon the projects, which Todd Construction timely appealed. Compl. ¶ 6. According to Todd Construction, the Corps issued a final decision rejecting Todd Construction's appeal and issuing the final evaluations. Compl. ¶ 7. The Corps then allegedly posted these evaluations in the Construction Contractor Appraisal Support System ("CCASS"). Compl. ¶ 7.

Todd Construction alleges that the final decision of the Corps should be found unlawful and set aside because the actions of the Corps in connection with the performance evaluations were: (1) arbitrary, capricious, an abuse of discretion, and not in accordance with law; (2) outside of the statutory and regulatory authority of the Corps; (3) in violation of procedures required by law; and (4) unsupported by substantial evidence and/or unwarranted by the facts. Compl. ¶ 9.

In its complaint, Todd Construction requests that this Court determine that the final decision of the Corps is unlawful and should be set aside. Compl. 2. Todd Construction also seeks an order from this Court directing the Corps to remove the final performance evaluations from the CCASS. Id. Finally, Todd Construction seeks any other relief as the Court deems proper, including interest, costs, and attorney fees. Compl. 3.

## ARGUMENT

## I. Applicable Legal Standard

It is axiomatic that if this Court lacks subject matter jurisdiction over the claims in the complaint, the complaint must be dismissed. RCFC 12(b)(1). In determining whether it possesses subject matter jurisdiction, this Court is to treat the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).

The jurisdiction of this Court is limited; Congress has only granted this Court jurisdiction to entertain claims where the United States has waived its sovereign immunity from suit. United States v. Testan, 424 U.S. 392, 399 (1972); Booth v. United States, 990 F.2d 617, 619 (Fed. Cir. 1993). The Tucker Act, 28 U.S.C. § 1491, governs the United States' waiver of sovereign immunity from suit in this Court:

> This statute confers jurisdiction on the Court of Federal Claims, and a corresponding waiver of the government's sovereign immunity from suit, when the constitutional provision, statute, or regulation in question expressly creates a substantive right enforceable against the federal government for money damages.

LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Because the Tucker Act is merely a jurisdictional statute, however, it creates no substantive right to relief in suits against the United States. Accordingly, a plaintiff in this Court must identify a contract or money-mandating constitutional provision, statute, or regulation that entitles it to relief. Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997); Sanders v. United States, 34 Fed. Cl. 75, 78 (1995).

The plaintiff bears the burden of showing that the Court possesses jurisdiction to consider its claims. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Furthermore, the plaintiff must carry this burden by a preponderance of the evidence. Reynolds, 846 F.2d at 748.

In addition, to state a claim for relief in this Court, a plaintiff must set forth factual allegations in support of its claim, rather than merely setting forth labels and conclusions, or merely reciting the elements of a cause of action. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-69 (May 21, 2007) (limiting the language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). As the Supreme Court recently held, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.

II. This Court Lacks Jurisdiction To Entertain Todd Construction's Complaint

Todd Construction has attempted to state a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, et seq, which permits review of agency action seeking equitable relief. Compl. ¶ 3; see Martinez v. United States, 333 F.3d at 1313 (discussing nonstatutory review actions under the APA by plaintiffs seeking an upgrade in discharge classification without monetary relief). Todd Construction cites 5 U.S.C. §§ 701, et seq, as a basis for jurisdiction, and recites the APA standard for unlawful agency action. As such, its complaint falls well outside the jurisdiction of this Court because this Court lacks jurisdiction over suits

under the APA. See Martinez, 333 F.3d at 1313 (stating that the Court of Federal Claims lacks APA jurisdiction); Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993); McNabb v. United States, 54 Fed. Cl. 759, 767 (2002) (explaining "APA reviews are conducted in federal district court rather than the [United States] Court of Federal Claims, since the APA addresses 'relief other than money damages.'"). Accordingly, Todd Construction's complaint must be dismissed.

## III. To The Extent That This Court Treats Todd Construction's Complaint As One Arising Under The Contract Disputes Act, This Court Still Does Not Possess Jurisdiction To Entertain The Complaint

Should this Court decide to treat Todd Construction's complaint as one arising under the Contract Disputes Act, this Court still lacks jurisdiction.[2] This Court is only permitted to grant nonmonetary relief in CDA cases under limited circumstances, namely where that nonmonetary relief involves interpretation of the contract terms or where the nonmonetary relief being sought is essentially a "substitute" for monetary relief. Because neither of those circumstances exist here, this Court lacks jurisdiction to grant Todd Construction either the declaratory or the injunctive relief it seeks.[3]

---

[2] Todd Construction does allege that it received a "final decision" from the Corps regarding the issue of the performance evaluations. Compl. ¶ 7. It appears that this decision was not a final decision upon a CDA claim, but rather a decision under the regulations of the Corps which govern appeals of performance evaluations. See Appendix.

[3] In its complaint, Todd Construction cites to 28 U.S.C. § 1491(a)(1) as a basis of jurisdiction. Although 28 U.S.C. § 1491(a)(1) grants this Court jurisdiction over any claim upon any express contract, Todd Construction's claims regarding its performance evaluations are not "claims upon" Todd Construction's contract with the United States. We note that even those cases which found that this Court could assert jurisdiction over nonmonetary CDA claims, discussed below, found their basis for jurisdiction in 28 U.S.C. § 1491(a)(2)'s reference to "other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of [the CDA]." Accordingly, in this motion, we set forth the reasons why, under 28

The Tucker Act grants this Court jurisdiction over CDA "claims," including "other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of [the CDA]." 28 U.S.C. § 1491(a)(2). The CDA, in turn, leaves the term "claim" undefined, and thus the Court must look to the Federal Acquisition Regulations ("FAR"), to determine what is necessary for a contractor's submission to be deemed a claim. Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995). The FAR broadly defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract." 48 C.F.R. § 52.233-1(c) (2003) (emphasis added). Where, as here, the contractor's claim is that the Government breached its internal policies, rather than the provisions of the contract, such a claim cannot properly be considered a claim "relating to the contract."

This is confirmed by the decisions of the United States Court of Appeals for the Federal Circuit, which are binding upon this Court. We are aware of no Federal Circuit decisions providing that a request to amend a performance evaluation may serve as a CDA claim. Rather, those Federal Circuit decisions which hold that the Court of Federal Claims possesses jurisdiction over certain nonmonetary disputes, do so only with respect to claims which directly implicate the terms of the contract. For example, in Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999), the Federal Circuit held that the Court of Federal Claims possessed jurisdiction over a contractor's declaratory relief claim. In that case, the contractor sought a declaration that it was not obligated to perform a particular option under the contract

---

U.S.C. § 1491(a)(2), this Court lacks jurisdiction.

because the Government had not validly invoked the contractual option clause. Alliant, 178 F.3d at 1263. This claim necessarily invoked this Court's jurisdiction over contractual disputes as the Court was required to interpret the contractual option clause and determine whether indeed the Government had validly invoked the clause.

Similarly, in Garrett v. General Electric Company, 987 F.2d 747 (Fed. Cir. 1993), the Federal Circuit found that the Armed Services Board of Contract Appeals possessed jurisdiction over a claim by the Government consisting of a directive to the contractor to take certain corrective action under a contract. There, the Federal Circuit relied upon its prior precedent finding jurisdiction to entertain claims regarding terminations for default, and found that the board properly possessed jurisdiction over the Government's claim as a "nonmonetary substitute for monetary relief." Id. at 750-751. In this case, Todd Construction is seeking neither a nonmonetary substitute for monetary relief nor an interpretation of the contract. Rather, it seeks a determination that the performance evaluations were "unlawful" under the standards for agency action set forth in the APA. Compl. 2-3.

Finally, the Federal Circuit has held that the 1992 amendments that added the language to the Tucker Act providing for jurisdiction to consider such "nonmonetary claims" were intended to insure that the Court of Federal Claims had "jurisdictional parity" with the boards of contract appeals. Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1269-70 (Fed. Cir.) (citing Garrett v. General Electric Co., 987 F.2d 747 (Fed. Cir. 1993)), reh'g denied, 186 F.3d 1379 (Fed. Cir. 1999). The boards of contract appeals have consistently held that they possess no jurisdiction to rescind performance evaluations, both prior to and after the 1992 amendments were implemented. See In re TLT Construction Corp., ASBCA No. 53,769, 02-2 BCA ¶ 31,969

(Aug. 26, 2002); G. Bliuzius Contractors, Inc., ASBCA No. 42,365, 92-1 BCA ¶ 24,605 (Nov. 22, 1991); Konoike Construction Co., ASBCA 40,910, 91-3 BCA ¶ 24,170 (July 2, 1991). Indeed, the boards have specifically held that a request for review of a performance evaluation is not a claim under the Contract Disputes Act. See Konoike, ASBCA 40,910, 91-3 BCA ¶ 24,170. Accordingly, this Court should similarly find that it does not have jurisdiction to entertain Todd Construction's request.

The only decision finding jurisdiction of this Court to entertain a request to amend a performance evaluation is Record Steel and Construction, Inc. v. United States, 62 Fed. Cl. 508 (2004). That case may have been wrongly decided, but, in any event, the case is distinguishable from this one. There, the contractor brought a primary claim seeking an equitable adjustment upon the ground that the Government had made a constructive change in the contract by requiring certain "over-excavation" tasks. Id. at 510-11. As the Court explained, "the crux of the parties' dispute is whether the contract at issue required over-excavation." Id. The contractor's claim regarding its performance evaluations was a derivative claim: According to the contractor, the erroneous performance evaluations of the Government were based upon the Government's erroneous determination that the contract required over-excavation. Id. Again, the contractor's claim for nonmonetary relief was directly related to the contract terms.

Todd Construction's claims regarding its performance evaluations are not at all related to the terms of the contract. Upon the face of its complaint, Todd Construction's claims are related only to the Government's alleged violations of internal procedures governing the issuance of performance evaluations. Such a claim is properly an APA claim, and therefore cannot be heard in this Court.

IV. Even If This Court Did Possess Jurisdiction To Adjudicate Todd Construction's APA Claim, Todd Construction Has Failed To State A Claim For Relief

To succeed on an APA claim, Todd Construction would have to show that the actions of the Corps were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)A). Todd Construction's complaint fails because it does not present any claims or allege any facts in support of its claims. Todd Construction sets forth no facts which would support a claim that the actions of the Corps met the standard required for an APA violation. It simply states that the Corps evaluated Todd Construction's performance as "unsatisfactory" and rejected Todd Construction's appeal of this evaluation. The omission of any factual allegations in support of its APA claim is fatal to its pleading under the standard set forth by the Supreme Court in Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-69. See, e.g., Taylor, 73 Fed. Cl. at 546 (plaintiff failed to state a claim where plaintiff did not allege that the Government breached a contract); Westover v. United States, 71 Fed. Cl. 635, 640 (2006) (plaintiff failed to state a claim where plaintiff did not allege that breach of the neutral references clause was the but-for cause of the loss of his prior employment and associated pay). Its allegation that the actions of the Corps were "arbitrary, capricious, an abuse of discretion and not in accordance with law," is conclusory at best and therefore insufficient to state a claim for relief. Twombly, 127 S. Ct. at 1964-69.

CONCLUSION

For the foregoing reasons, this Court should dismiss Todd Construction's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Of Counsel:
TERRY G. PETERS
Senior Assistant District Counsel
MARY L. ASHBY
Assistant District Counsel
Office of Counsel
Savannah District
US Army Corps of Engineers
100 Oglethorpe Avenue
P.O. Box 889
Savannah, GA 31402
Tel: (912) 652-5025
Fax: (912) 652-5126

August 24, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 24th day of August, 2007, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah

**APPENDIX**

| | | |
|---|---|---|
| CEMP-CP<br><br>Regulation No. 415-1-17 | Department of the Army<br>U.S. Army Corps of Engineers<br>Washington, DC 20314-1000 | ER 415-1-17<br><br>26 Mar 93 |
| | Construction<br><br>CONTRACTOR PERFORMANCE EVALUATIONS | |
| | **Distribution Restriction Statement**<br>Approved for public release; distribution is unlimited. | |

DEPARTMENT OF THE ARMY
U.S. Army Corps of Engineers
Washington, D.C. 20314-1000

ER 415-1-17

CEMP-CP

Regulation
No. 415-1-17

26 March 1993

Construction
**CONTRACTOR PERFORMANCE EVALUATIONS**

1. **Purpose**. This regulation establishes procedures for evaluating construction contractor performance.

2. **Applicability**. This regulation is applicable to all HQUSACE/OCE elements and Major Subordinate Commands (MSC) having responsibility for military and civil construction contracts.

3. **References**.

a. FAR 9.406

b. FAR 36.201

c. DFARS 236.201

d. EFARS 36.201

e. ER 15-1-29

f. ER 1180-1-6

4. **Procedures**.

a. It is USACE standard operating procedure that the Contracting Officer evaluate contractor's performance and prepare a performance report using the SF 1420, Performance Evaluation - Construction Contracts, for each construction contract of:

(1) $100,000 or more;

(2) $25,000 or more, if any element of performance is either unsatisfactory or outstanding;

(3) $10,000 or more, if the contract is terminated for default.

The above construction contract costs are based on the contract cost at the time of substantial completion or at the time of award, whichever is greater.

---

This regulation supercedes ER 415-7-1(FR), 3 July 1990

b. The final performance evaluation report shall be prepared within 60 days of substantial completion of the work, or at the time of contract termination.

c. An interim performance evaluation report shall be prepared for incomplete contracts when a contractor's performance is generally unsatisfactory for any element, for a period of three months or longer, or as appropriate.

d. Preaward Responsibility Determinations. Previous performance evaluations of construction contractors in the Construction Contractor Appraisal Support System (CCASS) must be used in making responsibility determinations. Before selecting qualified responsible contractors for future awards, the Contracting Officer must retrieve from the CCASS central data base all performance evaluations on file pertaining to the prospective awardees and make a determination of responsibility regarding the contractors' previous performance on DOD construction contracts. Particular attention should be given interim unsatisfactory evaluations, whenever a final evaluation is not yet available. A determination of nonresponsibility by the CO based on the CCASS files must also be entered into the CCASS system to preclude barring future awards as a result of multiple nonresponsibility determinations prior to formal suspension or debarment proceedings taking place.

5. **Implementation**.

a. The first step in evaluating contractor's performance is notifying the contractor at the preconstruction conference of the performance elements against which his performance will be evaluated. This notification is documented in the contract file. The contractor should be informed as to what constitutes satisfactory and unsatisfactory performance during the life of the contract, and that the Contracting Officer (CO) intends to use performance evaluations to document contract performance. Documentation to support the evaluation should be collected throughout the course of the contract.

b. Interim Performance Evaluation Reports

(1) An interim performance evaluation report must be initiated when a contractor's performance is unsatisfactory on one or more elements for a period of three months or longer, or when circumstances dictate as noted in paragraph b(3) below. The administrative contracting officer (ACO) or the contracting officer representative (COR) must be on the alert for indications of unsatisfactory performance. When unsatisfactory performance is noted, the contractor will be called into a conference to discuss problem areas and their resolution.

A Memorandum for Record (MFR) of the meeting will be prepared. The contractor will be advised that performance must improve within 30 days or within a reasonable period. During this period, the ACO/COR will closely monitor problem areas. If no material improvement is noted, a letter will be sent to the contractor as notification of intent to issue an interim unsatisfactory performance rating. The letter will address previous meetings and identify the facts on which the interim unsatisfactory rating is based. A copy of this correspondence will be forwarded to the contractor's bonding company. (NOTE: The Contracting Officer should be kept personally aware of the status of the contract.) It is mandatory that the contractor be given the opportunity to meet with the CO prior to issuance of the unsatisfactory rating.

(2) The contractor will be allowed at least 14 days to respond in writing to the notification letter. At the end of the specified time period, if there is no response or evidence of substantially improved performance, the interim unsatisfactory rating will be sent to the district's Construction Division for processing. Once again, the contractor's bonding company will be notified of the actions taken. If the contractor responds within the alloted time frame, all written comments will be included in the report. If not, a comment regarding the contractor's lack of response will be included in the evaluation. Should the contractor respond to the "letter of intent" within the allotted time frame, any written comments made by the contractor shall be included in the report and factual discrepancies alleged shall be discussed, resolved, if possible, and made a part of the report. Changes in the report may be made, if appropriate.

(3) As stated in paragraph 5b(1) above, the normal time frame for initiation of an interim unsatisfactory performance evaluation usually occurs after three months of unsatisfactory performance. However, in circumstances involving a critical feature of the work that the contractor must perform satisfactorily and does not, or if the project is of a short duration, an unsatisfactory rating for poor performance may be issued without waiting for the end of the three month evaluation period.

(4) Interim unsatisfactory ratings alert contractors of their shortcomings and serve as a valuable tool in energizing them to improve their performance, correct deficiencies, and avoid a final unsatisfactory rating. After the issuance of an interim unsatisfactory rating, the ACO/COR must continue to monitor the contractor's performance, and to document performance improvement, or vice versa, as the case may be. Documents should be in the form of memoranda of

meetings, "cure" letters to the contractor, quality assurance reports, photographs, etc. The ACO/COR will re-evaluate the interim unsatisfactory rating every three months until the contract is complete. The re-evaluation should include the reasons why it is in the Government's best interests to allow the contractor to continue performance of the contract. A new evaluation is not required if the unsatisfactory performance continues for additional periods, although the files should continue to be fully documented. However, should the contractor's performance on any performance evaluation element change, the original interim rating may be amended with a written addendum which reflects the changes. This written amendment must be forwarded to both the original contract file and also to the CCASS file.

c. Final Performance Evaluation Reports

(1) Within 60 days of substantial completion of the work (As defined in AMPRS data item 0435), an SF 1420 (Performance Evaluation Construction-Contracts) must be prepared and forwarded to the district. Final evaluation performance reports are processed in the same manner as described above, except that the 30-day review period stipulated is only applicable to interim unsatisfactory evaluation reports. The original performance evaluation report for each contract is retained by the district in the contract file for a minimum of six years after the date of the report. A copy of the report is transmitted to the NPD central data base system (CCASS) and is also retained for six years.

U.S. Army Engineer Division, North Pacific
ATTN: CENPD-CT
P.O. Box 2870
Portland, Oregon 97208-2870

Telephone: (503) 326-3459 or FTS 423-3459

The performance report and matters pertaining thereto are marked "For Official Use Only." The Resident engineer is usually the evaluating official who prepares the report. Each performance report shall be reviewed for accuracy and fairness by an individual having knowledge of the contractor's performance at a supervisory level above that of the evaluating official.

(2) If the evaluating official concludes that a contractor's overall performance was unsatisfactory, the contractor shall be advised in writing that a report of unsatisfactory performance is being prepared and the basis for the report. The contractor must be afforded the opportunity to submit written comments, which should be addressed and included in the report. There are no rigid rules governing the number of items on a performance

evaluation which must be unsatisfactory before an overall unsatisfactory rating is issued. Unsatisfactory performance on one or more of the elements to be rated, may be sufficient to justify an overall unsatisfactory rating. If an unsatisfactory rating is contemplated, the Office of Counsel should be involved in preparing and reviewing the necessary documentation. Final unsatisfactory ratings should not be a surprise to the contractor, since interim notification of the contractor's deficiencies should be fully documented during the course of the contract and it is mandatory that the contractor be given the opportunity to meet with the Contracting Officer prior to issuance of the unsatisfactory rating. However, an interim unsatisfactory report is not a prerequisite for issuing a final unsatisfactory rating. Further, the Contracting Officer must be satisfied that the justification and documentation supporting an unsatisfactory rating is adequate. Interim and final unsatisfactory performance evaluation reports prepared by the evaluating official must be signed by the Contracting Officer. The final performance evaluation report will supercede any previous interim reports. Final unsatisfactory ratings can be amended, if warranted, to reflect changes in the evaluation of performance elements caused by resolution of contractor claims or compliance with warranty requirements. Amendments to final unsatisfactory reports in the CCASS data base must be made in writing to CENPD; stating why an amendment to the rating is necessary, and which elements need to be changed.

(3) On job order contracts, a final performance evaluation report should be prepared at the conclusion of the entire contract.

d. Debarment. Following issuance of a final unsatisfactory performance evaluation report, the Contracting Officer shall be promptly make a determination regarding the appropriateness of pursuing a debarment action against the contractor based on his record of unsatisfactory performance and previous CCASS performance evaluations. This written determination shall indicate the Contracting Officer's rationale for seeking or not seeking debarment based on guidance found in FAR 9.406. The HQUSACE Construction Contractor Performance Review Team (CCPRT), as noted in ER 15-1-29, may also recommend initiation of a debarment action against a contractor, which should also be pursued by the Contracting Officer. However, the above noted ER does not preclude the Contracting Officer from making an independent determination that debarment action is justified and should be pursued.

e. Outstanding Performance Ratings. When appropriate, contractors should be recognized for outstanding performance on projects. When submitting an outstanding rating, the evaluating official will include

a draft letter of appreciation to the contractor with a copy of the evaluation. The construction division project manager shall review the draft and have it typed in final form for the Contracting Officer's signature. Contractors with outstanding performance ratings should be considered for USACE recognition and Division awards.

f. Appeals. The contractor receiving a final unsatisfactory performance evaluation should be notified of their option to appeal the rating to one level above the Contracting Officer. The appeal must be made within 30 calendar days of receipt by the contractor of the unsatisfactory evaluation. The appeal must be a written request to the Contracting Officer stating the reasons why a further review of their performance evaluation is justified, and the circumstances which may cause the Government to revise its performance rating of the contractor. Unsatisfactory performance evaluations should not be entered into the CCASS system until the 30 day appeal rights expire or the appeal procedure is completed. Interim unsatisfactory performance evaluations cannot be appealed.

g. Subcontractor Performance Evaluations. Where a subcontractor is known to exert significant influence on or control progress through a special relationship with the prime contractor (as in the case of a subsidiary or an affiliated company), or by virtue of performing a significant portion of the contract, a performance evaluation will be prepared on the subcontractor, in addition to the evaluation report prepared on the prime contractor. Subcontractor evaluations are stored in the CCASS data base in the same manner as prime contractors.

h. Contractor Notice. A copy of each completed SF 1420 must be formally transmitted to the contractor, regardless of the rating. This action is especially important for contractors who are performing in an unsatisfactory manner. Unsatisfactory contractors should be given a copy of the performance evaluation report as soon as it has been processed and signed by the Contracting Officer. The fact that it is classified "FOUO" does not preclude sending the contractor a copy.

FOR THE COMMANDER:

2 APPENDIXES:
APP A - Guidance for Documenting Contractor Performance Evaluations
APP B - CCASS

WILLIAM D. BROWN
Colonel, Corps of Engineers
Chief of Staff

## APPENDIX A

## GUIDANCE FOR DOCUMENTING CONTRACTOR PERFORMANCE EVALUATIONS

1. There are several reasons why it is extremely important to document the performance of a construction contractor. The performance documentation can be used to establish in writing your case for possible future termination; to document possible justification for debarment; and also as a tool to prod the contractor to perform up to the contract standards. However, the question that continues to be asked is, "what constitutes adequate documentation for performance appraisals?" It is suggested that you ask yourself the following questions as a starting point when you evaluate a contractor's performance with respect to each rated element.

a. Quality of Work (Contractor Quality Control):

Quality of Work reflects the contractor's management of the quality control program, as well as the quality of the work which is placed. Questions which should be addressed are as follows: Has a quality product been provided? If not, specifically describe the deficiency in quality and the shortcomings in the contractor's quality control system responsible for it, for example:

- Inadequate control
- Failure to perform necessary testing
- Failure to implement 3-phase inspection process
- Inadequate or incomplete CQC documentation
- Failure to identify, and correct deficient work
- Inadequate reviews of materials and shop drawings
- Incorporation of unspecified materials

To back up any proposed unsatisfactory rating, Item 14 of the SF 1420 must contain detailed comments, based on back-up material and with specific instances of deficiencies, as appropriate.

b. Timely Performance:

- Is the contractor completing the construction activities in a timely manner? This includes administrative activities, as well as physical construction activities such as submittal management response to RFP's, etc.

- Did the contractor adequately schedule the work?

- Has the contractor met administrative milestone dates?

- Has the contractor met physical milestone dates specified by contract or agreed to in the project schedule?

- If the schedule has slipped through the contractor's fault or negligence, has he taken appropriate corrective action of his own volition?

- Has the contractor furnished updated project schedules on a timely basis?

c. Effectiveness of Management:

- Are the contractor's on-site and home office management personnel exhibiting the capacity to adequately plan, schedule, resource, organize and otherwise manage the work? If not, describe and relate to other rated elements.

- Is the contractor making a good faith effort to comply with its subcontracting plan?

d. Compliance with Safety Standards:

- Has the contractor implemented an effective safety program; one which minimizes/mitigates potential accidents?

- Has the contractor provided appropriate personnel protective equipment and associated necessary training?

- Has the contractor taken necessary corrective actions when safety deficiencies are noted or are violations only corrected after significant Government intervention?

e. Compliance with Labor Standards:

- Has the contractor complied with all required labor standards and provisions?

- Have necessary corrective actions been made without significant Government intervention?

- Are payroll records being submitted in a complete and timely manner?

- Is the contractor complying with affirmative action and EEO compliance requirements?

f. SF 1420 Preparation:

- The telephone number of the Resident Engineer/Area Engineer or evaluating official who prepares the report should be in the SF 1420.

- The contractor's Contractor Establishment Code (formerly referred to as the DUNS number) should be shown in block 2 of the SF 1420.

- A notation of Interim report, or Subcontractor should be clearly displayed at the top of the SF 1420, if applicable.

- The percentage of work accomplished by each subcontractor is also required information.

- The signature of the Resident Engineer or appropriate evaluating official designated by the Contracting Officer is required on each SF 1420.

g. Coordination with the Using Activity (Customer)

- It is recommended that the evaluating official solicit observations and written comments from the Using Activity (Customer) concerning the contractor's overall performance prior to finalizing the evaluation.

2. The above questions are not intended to be all inclusive, but should provide a point of departure to develop additional questions and responses which will result in the preparation of a well-documented performance evaluation. Also, the Office of Counsel should be brought into the process, as early as possible, if an unsatisfactory rating is expected, so that they can assist in reviewing and developing adequate documentation.

## APPENDIX B

## CONSTRUCTION CONTRACTOR APPRAISAL SUPPORT SYSTEM

1. The Construction Contractor Appraisal Support System (CCASS) is a centralized and automated data base containing performance evaluation information on DOD construction contractors. The SF 1420, Performance Evaluation - Construction Contracts is electronically transmitted to the CCASS central data base, which is maintained in Portland, Oregon in accordance with criteria in DFARS 236.201. It is recommended that preparation of the SF 1420 be completed using the CCASS PC Program, Version 4.0.

2. This software program has been designed to assist the construction field office in preparing the Standard Form 1420 and electronically distributing the forms to the district office and the centralized data base. This is a self-directed program which requires some knowledge of personal computers and telecommunication facilities. The user interface allows the entering of data to any block, in no specific order. The following information will be stored in the NPD CCASS data base:

a. All information on the front of the SF 1420 form.

b. The Contractor's Establishment Code (DUNS Number).

c. Whether the performance appraisal is Interim or Final.

d. Whether the contractor is a prime or a subcontractor.

e. Name and telephone number of the individual to contact who is most knowledgeable of the rated contractor concerning the performance appraisal. This information will enable CCASS users to contact the person having first-hand experience with the contractor's performance.

f. Whether the currency listed is foreign or U.S.

g. Whether the contract was terminated for Default or Convenience.

3. The PC program will store the information contained in the blocks reserved for Remarks on Outstanding/Unsatisfactory and will allow you to print a hard copy of the SF 1420 for use as the official record copy. However, the information in the remarks block will not be stored in the NPD data base.

4. Before the performance appraisal is transmitted to the NPD data base, the system performs a series of edit checks. Copies of the user guide, computer access information, the necessary software, and additional assistance on the operation of the system is available by contacting the CCASS data base manager.

U.S. Army Engineer Division, North Pacific
ATTN: CENPD-CT
P.O. Box 2870
Portland, OR 97208-2870

Telephone: (503) 326-3459
FTS: 423-3459