| | | |
|---|---|---|
| CEMP-CP<br><br>Regulation No. 415-1-17 | Department of the Army<br>U.S. Army Corps of Engineers<br>Washington, DC 20314-1000 | ER 415-1-17<br><br>26 Mar 93 |
| | Construction<br><br>CONTRACTOR PERFORMANCE EVALUATIONS | |
| | **Distribution Restriction Statement**<br>Approved for public release; distribution is unlimited. | |

DEPARTMENT OF THE ARMY
U.S. Army Corps of Engineers
Washington, D.C. 20314-1000

ER 415-1-17

CEMP-CP

Regulation
No. 415-1-17

26 March 1993

Construction
**CONTRACTOR PERFORMANCE EVALUATIONS**

1. Purpose. This regulation establishes procedures for evaluating construction contractor performance.

2. Applicability. This regulation is applicable to all HQUSACE/OCE elements and Major Subordinate Commands (MSC) having responsibility for military and civil construction contracts.

3. References.

a. FAR 9.406

b. FAR 36.201

c. DFARS 236.201

d. EFARS 36.201

e. ER 15-1-29

f. ER 1180-1-6

4. Procedures.

a. It is USACE standard operating procedure that the Contracting Officer evaluate contractor's performance and prepare a performance report using the SF 1420, Performance Evaluation - Construction Contracts, for each construction contract of:

(1) $100,000 or more;

(2) $25,000 or more, if any element of performance is either unsatisfactory or outstanding;

(3) $10,000 or more, if the contract is terminated for default.

The above construction contract costs are based on the contract cost at the time of substantial completion or at the time of award, whichever is greater.

This regulation supercedes ER 415-7-1(FR), 3 July 1990

b. The final performance evaluation report shall be prepared within 60 days of substantial completion of the work, or at the time of contract termination.

c. An interim performance evaluation report shall be prepared for incomplete contracts when a contractor's performance is generally unsatisfactory for any element, for a period of three months or longer, or as appropriate.

d. Preaward Responsibility Determinations. Previous performance evaluations of construction contractors in the Construction Contractor Appraisal Support System (CCASS) must be used in making responsibility determinations. Before selecting qualified responsible contractors for future awards, the Contracting Officer must retrieve from the CCASS central data base all performance evaluations on file pertaining to the prospective awardees and make a determination of responsibility regarding the contractors' previous performance on DOD construction contracts. Particular attention should be given interim unsatisfactory evaluations, whenever a final evaluation is not yet available. A determination of nonresponsibility by the CO based on the CCASS files must also be entered into the CCASS system to preclude barring future awards as a result of multiple nonresponsibility determinations prior to formal suspension or debarment proceedings taking place.

5. Implementation.

a. The first step in evaluating contractor's performance is notifying the contractor at the preconstruction conference of the performance elements against which his performance will be evaluated. This notification is documented in the contract file. The contractor should be informed as to what constitutes satisfactory and unsatisfactory performance during the life of the contract, and that the Contracting Officer (CO) intends to use performance evaluations to document contract performance. Documentation to support the evaluation should be collected throughout the course of the contract.

b. Interim Performance Evaluation Reports

(1) An interim performance evaluation report must be initiated when a contractor's performance is unsatisfactory on one or more elements for a period of three months or longer, or when circumstances dictate as noted in paragraph b(3) below. The administrative contracting officer (ACO) or the contracting officer representative (COR) must be on the alert for indications of unsatisfactory performance. When unsatisfactory performance is noted, the contractor will be called into a conference to discuss problem areas and their resolution.

A Memorandum for Record (MFR) of the meeting will be prepared. The contractor will be advised that performance must improve within 30 days or within a reasonable period. During this period, the ACO/COR will closely monitor problem areas. If no material improvement is noted, a letter will be sent to the contractor as notification of intent to issue an interim unsatisfactory performance rating. The letter will address previous meetings and identify the facts on which the interim unsatisfactory rating is based. A copy of this correspondence will be forwarded to the contractor's bonding company. (NOTE: The Contracting Officer should be kept personally aware of the status of the contract.) It is mandatory that the contractor be given the opportunity to meet with the CO prior to issuance of the unsatisfactory rating.

(2) The contractor will be allowed at least 14 days to respond in writing to the notification letter. At the end of the specified time period, if there is no response or evidence of substantially improved performance, the interim unsatisfactory rating will be sent to the district's Construction Division for processing. Once again, the contractor's bonding company will be notified of the actions taken. If the contractor responds within the alloted time frame, all written comments will be included in the report. If not, a comment regarding the contractor's lack of response will be included in the evaluation. Should the contractor respond to the "letter of intent" within the allotted time frame, any written comments made by the contractor shall be included in the report and factual discrepancies alleged shall be discussed, resolved, if possible, and made a part of the report. Changes in the report may be made, if appropriate.

(3) As stated in paragraph 5b(1) above, the normal time frame for initiation of an interim unsatisfactory performance evaluation usually occurs after three months of unsatisfactory performance. However, in circumstances involving a critical feature of the work that the contractor must perform satisfactorily and does not, or if the project is of a short duration, an unsatisfactory rating for poor performance may be issued without waiting for the end of the three month evaluation period.

(4) Interim unsatisfactory ratings alert contractors of their shortcomings and serve as a valuable tool in energizing them to improve their performance, correct deficiencies, and avoid a final unsatisfactory rating. After the issuance of an interim unsatisfactory rating, the ACO/COR must continue to monitor the contractor's performance, and to document performance improvement, or vice versa, as the case may be. Documents should be in the form of memoranda of

meetings, "cure" letters to the contractor, quality assurance reports, photographs, etc. The ACO/COR will re-evaluate the interim unsatisfactory rating every three months until the contract is complete. The re-evaluation should include the reasons why it is in the Government's best interests to allow the contractor to continue performance of the contract. A new evaluation is not required if the unsatisfactory performance continues for additional periods, although the files should continue to be fully documented. However, should the contractor's performance on any performance evaluation element change, the original interim rating may be amended with a written addendum which reflects the changes. This written amendment must be forwarded to both the original contract file and also to the CCASS file.

c. Final Performance Evaluation Reports

(1) Within 60 days of substantial completion of the work (As defined in AMPRS data item 0435), an SF 1420 (Performance Evaluation Construction-Contracts) must be prepared and forwarded to the district. Final evaluation performance reports are processed in the same manner as described above, except that the 30-day review period stipulated is only applicable to interim unsatisfactory evaluation reports. The original performance evaluation report for each contract is retained by the district in the contract file for a minimum of six years after the date of the report. A copy of the report is transmitted to the NPD central data base system (CCASS) and is also retained for six years.

U.S. Army Engineer Division, North Pacific
ATTN: CENPD-CT
P.O. Box 2870
Portland, Oregon 97208-2870

Telephone: (503) 326-3459 or FTS 423-3459

The performance report and matters pertaining thereto are marked "For Official Use Only." The Resident engineer is usually the evaluating official who prepares the report. Each performance report shall be reviewed for accuracy and fairness by an individual having knowledge of the contractor's performance at a supervisory level above that of the evaluating official.

(2) If the evaluating official concludes that a contractor's overall performance was unsatisfactory, the contractor shall be advised in writing that a report of unsatisfactory performance is being prepared and the basis for the report. The contractor must be afforded the opportunity to submit written comments, which should be addressed and included in the report. There are no rigid rules governing the number of items on a performance

evaluation which must be unsatisfactory before an overall unsatisfactory rating is issued. Unsatisfactory performance on one or more of the elements to be rated, may be sufficient to justify an overall unsatisfactory rating. If an unsatisfactory rating is contemplated, the Office of Counsel should be involved in preparing and reviewing the necessary documentation. Final unsatisfactory ratings should not be a surprise to the contractor, since interim notification of the contractor's deficiencies should be fully documented during the course of the contract and it is mandatory that the contractor be given the opportunity to meet with the Contracting Officer prior to issuance of the unsatisfactory rating. However, an interim unsatisfactory report is not a prerequisite for issuing a final unsatisfactory rating. Further, the Contracting Officer must be satisfied that the justification and documentation supporting an unsatisfactory rating is adequate. Interim and final unsatisfactory performance evaluation reports prepared by the evaluating official must be signed by the Contracting Officer. The final performance evaluation report will supercede any previous interim reports. Final unsatisfactory ratings can be amended, if warranted, to reflect changes in the evaluation of performance elements caused by resolution of contractor claims or compliance with warranty requirements. Amendments to final unsatisfactory reports in the CCASS data base must be made in writing to CENPD; stating why an amendment to the rating is necessary, and which elements need to be changed.

(3) On job order contracts, a final performance evaluation report should be prepared at the conclusion of the entire contract.

d. Debarment. Following issuance of a final unsatisfactory performance evaluation report, the Contracting Officer shall be promptly make a determination regarding the appropriateness of pursuing a debarment action against the contractor based on his record of unsatisfactory performance and previous CCASS performance evaluations. This written determination shall indicate the Contracting Officer's rationale for seeking or not seeking debarment based on guidance found in FAR 9.406. The HQUSACE Construction Contractor Performance Review Team (CCPRT), as noted in ER 15-1-29, may also recommend initiation of a debarment action against a contractor, which should also be pursued by the Contracting Officer. However, the above noted ER does not preclude the Contracting Officer from making an independent determination that debarment action is justified and should be pursued.

e. Outstanding Performance Ratings. When appropriate, contractors should be recognized for outstanding performance on projects. When submitting an outstanding rating, the evaluating official will include

a draft letter of appreciation to the contractor with a copy of the evaluation. The construction division project manager shall review the draft and have it typed in final form for the Contracting Officer's signature. Contractors with outstanding performance ratings should be considered for USACE recognition and Division awards.

f. Appeals. The contractor receiving a final unsatisfactory performance evaluation should be notified of their option to appeal the rating to one level above the Contracting Officer. The appeal must be made within 30 calendar days of receipt by the contractor of the unsatisfactory evaluation. The appeal must be a written request to the Contracting Officer stating the reasons why a further review of their performance evaluation is justified, and the circumstances which may cause the Government to revise its performance rating of the contractor. Unsatisfactory performance evaluations should not be entered into the CCASS system until the 30 day appeal rights expire or the appeal procedure is completed. Interim unsatisfactory performance evaluations cannot be appealed.

g. Subcontractor Performance Evaluations. Where a subcontractor is known to exert significant influence on or control progress through a special relationship with the prime contractor (as in the case of a subsidiary or an affiliated company), or by virtue of performing a significant portion of the contract, a performance evaluation will be prepared on the subcontractor, in addition to the evaluation report prepared on the prime contractor. Subcontractor evaluations are stored in the CCASS data base in the same manner as prime contractors.

h. Contractor Notice. A copy of each completed SF 1420 must be formally transmitted to the contractor, regardless of the rating. This action is especially important for contractors who are performing in an unsatisfactory manner. Unsatisfactory contractors should be given a copy of the performance evaluation report as soon as it has been processed and signed by the Contracting Officer. The fact that it is classified "FOUO" does not preclude sending the contractor a copy.

FOR THE COMMANDER:

2 APPENDIXES:
APP A - Guidance for Documenting Contractor Performance Evaluations
APP B - CCASS

WILLIAM D. BROWN
Colonel, Corps of Engineers
Chief of Staff

## APPENDIX A

### GUIDANCE FOR DOCUMENTING CONTRACTOR PERFORMANCE EVALUATIONS

1. There are several reasons why it is extremely important to document the performance of a construction contractor. The performance documentation can be used to establish in writing your case for possible future termination; to document possible justification for debarment; and also as a tool to prod the contractor to perform up to the contract standards. However, the question that continues to be asked is, "what constitutes adequate documentation for performance appraisals?" It is suggested that you ask yourself the following questions as a starting point when you evaluate a contractor's performance with respect to each rated element.

a. Quality of Work (Contractor Quality Control):

Quality of Work reflects the contractor's management of the quality control program, as well as the quality of the work which is placed. Questions which should be addressed are as follows: Has a quality product been provided? If not, specifically describe the deficiency in quality and the shortcomings in the contractor's quality control system responsible for it, for example:

- Inadequate control
- Failure to perform necessary testing
- Failure to implement 3-phase inspection process
- Inadequate or incomplete CQC documentation
- Failure to identify, and correct deficient work
- Inadequate reviews of materials and shop drawings
- Incorporation of unspecified materials

To back up any proposed unsatisfactory rating, Item 14 of the SF 1420 must contain detailed comments, based on back-up material and with specific instances of deficiencies, as appropriate.

b. Timely Performance:

- Is the contractor completing the construction activities in a timely manner? This includes administrative activities, as well as physical construction activities such as submittal management response to RFP's, etc.

- Did the contractor adequately schedule the work?

- Has the contractor met administrative milestone dates?

- Has the contractor met physical milestone dates specified by contract or agreed to in the project schedule?

- If the schedule has slipped through the contractor's fault or negligence, has he taken appropriate corrective action of his own volition?

- Has the contractor furnished updated project schedules on a timely basis?

c. Effectiveness of Management:

- Are the contractor's on-site and home office management personnel exhibiting the capacity to adequately plan, schedule, resource, organize and otherwise manage the work? If not, describe and relate to other rated elements.

- Is the contractor making a good faith effort to comply with its subcontracting plan?

d. Compliance with Safety Standards:

- Has the contractor implemented an effective safety program; one which minimizes/mitigates potential accidents?

- Has the contractor provided appropriate personnel protective equipment and associated necessary training?

- Has the contractor taken necessary corrective actions when safety deficiencies are noted or are violations only corrected after significant Government intervention?

e. Compliance with Labor Standards:

- Has the contractor complied with all required labor standards and provisions?

- Have necessary corrective actions been made without significant Government intervention?

- Are payroll records being submitted in a complete and timely manner?

- Is the contractor complying with affirmative action and EEO compliance requirements?

f. SF 1420 Preparation:

- The telephone number of the Resident Engineer/Area Engineer or evaluating official who prepares the report should be in the SF 1420.

- The contractor's Contractor Establishment Code (formerly referred to as the DUNS number) should be shown in block 2 of the SF 1420.

- A notation of Interim report, or Subcontractor should be clearly displayed at the top of the SF 1420, if applicable.

- The percentage of work accomplished by each subcontractor is also required information.

- The signature of the Resident Engineer or appropriate evaluating official designated by the Contracting Officer is required on each SF 1420.

g. Coordination with the Using Activity (Customer)

- It is recommended that the evaluating official solicit observations and written comments from the Using Activity (Customer) concerning the contractor's overall performance prior to finalizing the evaluation.

2. The above questions are not intended to be all inclusive, but should provide a point of departure to develop additional questions and responses which will result in the preparation of a well-documented performance evaluation. Also, the Office of Counsel should be brought into the process, as early as possible, if an unsatisfactory rating is expected, so that they can assist in reviewing and developing adequate documentation.

# APPENDIX B

## CONSTRUCTION CONTRACTOR APPRAISAL SUPPORT SYSTEM

1. The Construction Contractor Appraisal Support System (CCASS) is a centralized and automated data base containing performance evaluation information on DOD construction contractors. The SF 1420, Performance Evaluation - Construction Contracts is electronically transmitted to the CCASS central data base, which is maintained in Portland, Oregon in accordance with criteria in DFARS 236.201. It is recommended that preparation of the SF 1420 be completed using the CCASS PC Program, Version 4.0.

2. This software program has been designed to assist the construction field office in preparing the Standard Form 1420 and electronically distributing the forms to the district office and the centralized data base. This is a self-directed program which requires some knowledge of personal computers and telecommunication facilities. The user interface allows the entering of data to any block, in no specific order. The following information will be stored in the NPD CCASS data base:

a. All information on the front of the SF 1420 form.

b. The Contractor's Establishment Code (DUNS Number).

c. Whether the performance appraisal is Interim or Final.

d. Whether the contractor is a prime or a subcontractor.

e. Name and telephone number of the individual to contact who is most knowledgeable of the rated contractor concerning the performance appraisal. This information will enable CCASS users to contact the person having first-hand experience with the contractor's performance.

f. Whether the currency listed is foreign or U.S.

g. Whether the contract was terminated for Default or Convenience.

3. The PC program will store the information contained in the blocks reserved for Remarks on Outstanding/Unsatisfactory and will allow you to print a hard copy of the SF 1420 for use as the official record copy. However, the information in the remarks block will not be stored in the NPD data base.

4. Before the performance appraisal is transmitted to the NPD data base, the system performs a series of edit checks. Copies of the user guide, computer access information, the necessary software, and additional assistance on the operation of the system is available by contacting the CCASS data base manager.

U.S. Army Engineer Division, North Pacific
ATTN: CENPD-CT
P.O. Box 2870
Portland, OR 97208-2870

Telephone: (503) 326-3459
FTS: 423-3459