**DEPARTMENT OF THE ARMY**
SAVANNAH DISTRICT, CORPS OF ENGINEERS
P.O. BOX 889
SAVANNAH, GEORGIA 31402-0889

April 25, 2007

REPLY TO
ATTENTION OF:

APR 30 2007

Contracting Division
A-E and Construction Branch

SUBJECT: Contract No.DACA21-03-D-0021,Task Order #0003 Repair ALS Roof, and Task Order #0004 Repair Roof, Building 2121, Seymour Johnson AFB, NC, Contractor Evaluation Final Contracting Officer Decision

Mr. Tom Lagalle
Todd Construction Company, Inc
BlackJack North @ Building N-4921
Post office Box 795
Spring Lake, North Carolina 28390

Dear Mr Lagalle:

This letter serves as my final decision regarding your performance on the above Task Orders.

In accordance with your Attorney Hayes Magrini & Gatewood letter dated October 2, 2006, I have reviewed and investigated the allegations as set forth in this letter. The following comments are provided to address the Procedural Deficiencies.

Regarding your questions concerning performance elements and what constitutes Satisfactory or Unsatisfactory:

- The minutes of the preconstruction conference meeting on November 13, 2003 reflect that the contractor was provided a preconstruction packet. The packet included a contractor evaluation rating form which is used for performance appraisals and clearly identifies the rating criteria considered.
- Additionally, it was noted in the minutes that Tom LaGalle stated Todd was familiar with Army Corps of Engineer performance requirements. Todd received three performance evaluations on other Task Orders from Seymour Johnson Resident Office between the period of December 31, 2003 and March 31, 2004.
- Therefore Todd's claim of being unaware of the performance elements is unfounded. The final Unsatisfactory was based on the overall rating including timeliness, management and quality.

EXHIBIT
F

- Regarding the allegation that proper procedures were not followed since the ACO failed to hold a conference or issue a Memorandum for Record prior to notification of an interim Unsatisfactory rating being considered:

  - Minutes of meeting held on January 12, 2004 reveal that Procedures processes discussed.

  - On February 3, 2004, a meeting was held with Contractor and the Contracting Representative Steve Blanchard at the Mr. Blanchard's office. The progress of Task Orders 0003 and 0004 was discussed.

  - A letter dated February 5, 2004 discusses the problems with the Task Orders and resolutions, specifically timely submissions of a schedule. The letter also indicated to the contractor that the ACO was considering an interim Unsatisfactory performance appraisal based on the contractor's failure to diligently pursue progress on Task Order 003 Repair Roof ALS Roof-Bldg 3611, and Task Order 004 Repair Roof-Bldg 2121 as required by FAR Clause 52.211-10 COMMENCEMENT, EXECUTION, AND COMPLETION OF WORK. Concern was expressed regarding untimely submittals and the fact that the contractor had no effective management plan on the Task Orders to mitigate these problem areas. The contractor was offered an opportunity to explain his position and a February 13, 2004 deadline was given.

The Government was obligated, but failed to give Todd notice and an opportunity to timely cure any performance deficiencies:

- A letter dated December 17, 2003 discussed the critical nature of submitting the work schedules and Todd's failure to do so.

- Letter dated February 5, 2004 discussed problems with the Task Orders and resolutions. The contractor was offered an opportunity to explain his position and a February 13, 2004 deadline was given. Based on our relationship with Todd, the ACO chose to continue working with them to complete the Task Orders. The Government's objective is to ensure completion of work and not to terminate the contractor.

- On April 1, 2004, a meeting was held to notify the contractor of the Government's intent to issue an Interim Unsatisfactory performance appraisal.

- On May 5, 2004, an Unsatisfactory Interim Performance was formally given and signed by the Contracting Officer. The rating was based on unacceptable management, quality control and performance. Based on the Government making numerous attempts to work with the contractor, a Memorandum for Record would have provided no additional value, therefore this claim is without merit.

Todd received ample notice of performance deficiencies prior to issuance of the Unsatisfactory performance appraisal. There were ample meetings and opportunities for the contractor to improve his performance.

The Government met with the contractor prior to issuing the interim Unsatisfactory appraisal. It is evident that required procedures were followed by the ACO for issuing the interim Unsatisfactory performance appraisal.

Therefore, it is my decision that the Unsatisfactory performance appraisal is justified and all required procedures were followed.

Sincerely,

Marcia C Coleman

Marcia Coleman
Contracting Officer

Enclosures -
Copies Furnished:
Hayes Margrini & Gatewood