# In the United States Court of Federal Claims

No. 07-324 C
Filed December 9, 2008
TO BE PUBLISHED

| | | |
|---|---|---|
| TODD CONSTRUCTION, L.P., f/k/a, | ) | |
| TODD CONSTRUCTION CO., INC., | ) | Court of Federal Claims Rules 12(b)(1), |
| | ) | 12(b)(6); Contract Disputes Act of 1978 |
| Plaintiff, | ) | ("CDA"), Definition of "Claim" as Used in |
| | ) | CDA; Jurisdiction Over Contracting Officer |
| | ) | Decision on Contractor's Challenge to |
| v. | ) | Performance Evaluation; Authority to Grant |
| | ) | Declaratory and Injunctive Relief in Resolving |
| | ) | Nonmonetary Dispute |
| THE UNITED STATES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Robert L. Magrini, Hayes Magrini & Gatewood, Oklahoma City, Oklahoma, for plaintiff.

Maame A.F. Ewusi-Mensah, Trial Attorney, Franklin E. White, Jr., Assistant Director, Jeanne E. Davidson, Director, Jeffrey S. Bucholtz, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Mary L. Ashby, United States Army Corps of Engineers, Savannah, Georgia, of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This case comes before the Court on defendant's motion to dismiss the complaint for lack of subject matter jurisdiction under Court of Federal Claims Rule 12(b)(1), or in the alternative for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The thorniest question framed by the parties is whether the plaintiff has submitted a "claim" within the meaning of the Contract Disputes Act of 1978 ("CDA") to the contracting officer. As explained below, the Court concludes that the plaintiff has asserted a claim within the meaning of the CDA and that the Court has jurisdiction over plaintiff's action seeking review of that decision. Before resolving defendant's motion to dismiss pursuant to Rule 12(b)(6), however, the Court requires

further briefing from the parties regarding the scope of its authority to provide relief upon plaintiff's claim and the standard of review.

## BACKGROUND

The facts alleged in the complaint are presumed to be true and construed favorably to the plaintiff for the purposes of this motion.  Def's Mot. to Dismiss at 1 ("Def.'s Mot.") (docket entry 9, Aug. 24, 2007); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  Because this is a motion to dismiss for lack of jurisdiction, the Court can look "beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists."  Lechliter v. United States, 70 Fed. Cl. 536, 543 (2006) (quoting Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)).  This background section also relies upon documents submitted by plaintiff in opposing the motion to dismiss, which the Court may utilize "to the extent that they allow the court to determine whether it has jurisdiction over this case."  Id.

In 2003, Todd Construction received two task orders from the United States Army Corps of Engineers ("Corps") for roof repair of buildings at the Seymour Johnson Air Force Base in North Carolina, and the work was completed in September of 2005.  Compl. ¶ 4 (docket entry 1, May 25, 2007); Ex. A to Pl.'s Supp. Br. (docket entry 18-2, Feb. 29, 2008).  On March 26, 2006, the Corps issued proposed final evaluations rating Todd's overall performance on the work as unsatisfactory.  Compl. ¶ 5.  Todd submitted comments to the contracting officer explaining why, in its view, those ratings were unmerited, but the contracting officer nonetheless issued final unfavorable evaluations on July 23, 2006.  Id. ¶ 6; Exs. B & C to Pl.'s Supp. Br (docket entries 18-3 & 18-4, Feb. 29, 2008).  In August of 2006, Todd appealed the contracting officer's decision to Ms. Rita Miles of the Department of the Army, alleging that the Government (1) violated the applicable performance review procedures set forth in Army Corps of Engineers Regulation 415-1-17 and (2) arbitrarily issued evaluations unsupported by the facts.  Ex. D to Pl.'s Supp. Br. (docket entry 18-5, Feb. 29, 2008).  Ms. Miles apparently provided some documents to a vice-president of Todd, and Todd responded to that communication on October 2, 2006.  Ex. E to Pl.'s Supp. Br. (docket entry 18-6, Feb. 29, 2008).  Ms. Miles rejected Todd's appeal on April 25, 2007.  Ex. F to Pl.'s Supp. Br. (docket entry 18-7, Feb. 29, 2008); Compl. ¶ 7 (indicating decision date of May 25, 2007).  The negative evaluations were then made part of the Construction Contractor Appraisal Support System ("CCASS").  Id.

On May 25, 2007, Todd filed this lawsuit seeking judicial review of the decision of the contracting officer rejecting Todd's challenge to the unsatisfactory performance appraisals.  Todd argued that (1) the Corps' actions were arbitrary, capricious, an abuse of discretion and not in accordance with law; (2) the Corps exceeded its statutory and regulatory authority; (3) the Corps failed to properly observe procedures required by law; and (4) the Corps' actions were unsupported by substantial evidence and/or unwarranted by the facts.  Todd seeks a judicial determination that the Corps' final decision was unlawful and an order directing the Corps to remove the evaluations from CCASS.  Todd asserted jurisdiction in this Court was proper

pursuant to 28 U.S.C. § 1491, with a specific reference to 1491(a)(1), and 5 U.S.C. §§ 701 et seq. Compl. ¶¶ 3, 8.

On August 24, 2007, the Government moved to dismiss Todd's complaint, alleging that this Court lacked subject matter jurisdiction or, in the alternative, that the complaint failed to state a claim pursuant to Rule 12(b)(6).  Def's Mot.  On September 28, 2007, plaintiff responded to the motion to dismiss.  Plaintiff's Objection to Defendant's Motion to Dismiss and Brief in Support ("Pl.'s Response") (docket entry 11, Sept. 28, 2007).   The positions set forth in those papers are, in brief, as follows.

First, the Government noted that the Court of Federal Claims lacks jurisdiction over claims brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., making any such claim improper in this forum.  Def.'s Mot. at 5.  In its response, plaintiff conceded the validity of the Government's position and asked, if the Court concluded it lacked jurisdiction under the Tucker Act, that it transfer the case to a district court.  Pl.'s Response at 5.  Defendant opposed this request on the grounds that such a transfer would be futile.  Defendant's Reply in Support of its Motion to Dismiss ("Def.'s Reply") (docket entry 12, Oct. 12, 2007).[1]

Second, defendant asserted that under 28 U.S.C. § 1491(a)(2), this Court lacks jurisdiction because Todd's challenge to the accuracy and procedural propriety of performance evaluations is not a "claim" within the meaning of the CDA because it is not made "as a matter of right" and does not arise from or relate to the contract.  Def.'s Mot. at 6 (citing Federal Acquisition Regulation ("FAR") § 52.233-1(c)).  Specifically, defendant contends, among other things, that "[w]here, as here, the contractor's claim is that the Government breached its internal policies, rather than the provisions of the contract, such a claim cannot properly be considered a claim 'relating to the contract.'"  Def.'s Mot. at 6.   These contentions are discussed more thoroughly below.

On February 13, 2008, Chief Judge Damich requested additional briefing on two issues: (1) the precise nature of the appeal Todd pursued within the Corps regarding the evaluations, particularly whether that appeal constituted a claim under the CDA, (2) if it were a claim, the

---

[1]  Defendant observed that Todd's complaint cites to 28 U.S.C. § 1491(a)(1) as the source of this Court's jurisdiction.  Because, the Government contends, that provision "grants this Court jurisdiction over any claim on any express contract," and "Todd Construction's claims regarding its performance evaluations are not 'claims upon' Todd Construction's contract with the United States," Todd's complaint should be dismissed.  Def.'s Mot. at 5 n.3.  Defendant asserts that although this Court possesses jurisdiction over some nonmonetary disputes, that jurisdiction arises not from 28 U.S.C. § 1491(a)(1), but instead from 28 U.S.C. § 1491(a)(2)'s reference to "other nonmonetary disputes on which a decision of the contracting officer has been issued."  Id. In its opposition to the motion to dismiss, plaintiff simply truncates its jurisdictional reference to 28 U.S.C. § 1491.  Pl.'s Response at 3.  The Court views § 1491(a)(2) as the proper potential basis for jurisdiction, and its analysis focuses on that provision.

criteria the court should use in reviewing it, and (3) if the Court determined that it lacked jurisdiction whether, under 28 U.S.C. § 1631, the court should take a "peek at the merits" before transferring a case and, in the event of a transfer, which jurisdiction would be appropriate.  Order for Supplemental Briefing (docket entry 17).

On September 12, 2008, the case was reassigned to this chambers.

## ANALYSIS

The only question the Court is presently deciding is whether an allegation that a contractor's performance evaluation (1) was issued without observing the proper procedures and (2) is substantively erroneous constitutes a "claim" within the meaning of the CDA.  Compl. ¶ 9.  For the reasons enumerated below, the Court concludes that such allegations do constitute a claim under the CDA, but the Court will request further briefing on the availability of the plaintiff's requested relief and on the standard of review.

*Legal Standard for Motions to Dismiss under 12(b)(1) and 12(b)(6)*

The defendant challenges plaintiff's complaint for lack of jurisdiction under Rule 12(b)(1), or in the alternative, for failure to state a claim under Rule 12(b)(6).  As to the first, plaintiff bears the burden to establish subject matter jurisdiction.  Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998).  If the court finds that it lacks subject matter jurisdiction over a claim, Rule 12(h)(3) requires the court to dismiss that claim.

If the court finds that it possesses jurisdiction to entertain one or all of plaintiff's claims, it still must dismiss those claims that fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  The plaintiff's complaint must be dismissed under Rule 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  Steward v. United States, 80 Fed. Cl. 540, 542-43 (2008) (quoting Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).  In considering a motion under Rule 12(b)(6), "[t]he court must determine whether the claimant is entitled to offer evidence to support the claims, not whether the claimant will ultimately prevail."  Chapman Law Firm v. Greenleaf Constr., 490 F.3d 934, 938 (Fed. Cir. 2007) (internal quotation omitted).

*Historical Background*

As amended in 1992, the Tucker Act grants jurisdiction to the Court of Federal Claims over "any claim by or against, or dispute with, a contractor arising under section 10(a)(1)[2] of the CDA, including a dispute concerning termination of a contract, rights in tangible or intangible

---

[2]  Section 10(a)(1) of the CDA is codified at 41 U.S.C. § 609(a)(1) and permits contractors to choose whether to appeal the decisions of government contracting officers to agency boards of contract appeals or to this Court.

4

property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act."[3]  28 U.S.C. § 1491(a)(2).  To understand the scope of this jurisdiction, it may be helpful to review some of the historical background.

The proposition with which we begin is that, as of the early 1970s, the then-Court of Claims had no jurisdiction over requests for declaratory judgments, unless the request was 'tied and subordinate to a monetary award.'"  United States v. Mitchell, 463 U.S. 206, 216 n.15 (1983) (quoting Austin v. United States, 206 Ct. Cl. 719, 723 (1975)); see also United States v. King, 395 U.S. 1 (1969).

The contract boards of appeals, on the other hand, were created by department regulations allowing the board to act on behalf of the agency secretary.   Their authority arose from a remedy-granting clause in the contract itself; if the contract provided for nonmonetary relief, the board could grant it.  Contractors' Nonmonetary Claims: The "Declaratory Judgment" Red Herring, 1 NASH & CIBINIC REP. ¶ 84 (1987); Henry J. Schweiter, Post-Award Declaratory Judgment Jurisdiction of the Claims Court and the BCA Over Non-Monetary Claims: Faithful Statutory Construction or the Abdication of Judicial Responsibility, 18 PUB. CONT. L.J. 277, 282 (1989).  Thus, "before the advent of the CDA, agency boards [were] much more willing than the Court of Claims to provide relief in the form of a declaration of the rights and obligations of the contracting parties."  Schweiter, 18 PUB. CONT. L.J. at 285.

As Congress considered the CDA, Section 14(k) of the bill would have given our predecessor, the Court of Claims, the authority to enter declaratory judgments pursuant to the Declaratory Judgment Act.  Contract Disputes Act of 1978, S. 3178, 95th Cong. § 14(k) (1978).  That provision was ultimately removed due to "concerns expressed by the Justice Department, the Department of Defense, and the Armed Service Committee that . . . declaratory judgment authority would undermine the disputes resolving process by permitting, in some cases, access to the court before presentation of a claim to the contracting officer."  124 Cong. Rec. 36267 (1978) (Robert C. Byrd, Explanation of Amendments).  This proposed amendment was not adopted, and the final law gave the Court of Claims jurisdiction over "any claim by or against, or dispute with, a contractor arising under the Contract Disputes Act of 1978."  Pub. L. No. 95-563 § 14(i), 92 Stat. 2383 (1978) (codified at 28 U.S.C. §1491(a)(2)).  In light of the legislative history, courts later determined that this language did not authorize them to issue declaratory judgments.  See Haynes Constr. v. United States, 10 Cl. Ct. 526, 528 (1986); Williams Int'l Corp. v. United States, 7 Cl. Ct. 726, 729-30 (1985).  Others contended, however, that the 1978 and 1982 legislative amendments and the FAR bestowed authority upon the Claims Court to issue declaratory judgments generally in contract cases, especially on the propriety of terminations for

---

[3]  Section 6 of the CDA, codified at 41 U.S.C. § 605(c)(2) and (c)(5), requires the contracting officer to issue a decision on a contractor's claim.

default.  See 1 NASH & CIBINIC REP. ¶ 84, supra;  Claude E. Atkins Enters., Inc. v. United States, 15 Cl. Ct. 644 (1988).[4]

As for the contract boards of appeals, the CDA converted those departmental entities to statutory creations and provided them authority "to grant any relief that would be available to a litigant asserting a contract claim in the Court of Claims."  Pub. L. No. 95-563, § 8(d), 92 Stat. 2383 (1978) (codified at 41 U.S.C. § 607(d)).  But the boards of contract appeals continued to hear cases regarding default terminations and other claims for nonmonetary relief, despite the CDA granting them only the authority to provide whatever relief the Claims Court could.  The boards apparently either did not view the CDA as limiting the jurisdiction they possessed prior to the CDA or believed that because the CDA expanded the jurisdiction of the Claims Court, it expanded the boards' jurisdiction.  Stan Hinton, Post-Contract Disputes Act Jurisdiction Over Nonmonetary Contract Disputes: A Critique of Malone v. United States, 19 PUB. CONT. L.J. 174, 186-87 (1989).  Therefore, although the CDA appeared to confer identical jurisdiction, the two fora exercised that authority differently.

In Malone v. United States, 849 F.2d 1441, 1444-45 (Fed. Cir. 1988), the Federal Circuit concluded that the agency boards of contract appeals possessed jurisdiction to provide "declaratory" relief in default termination claims, even though those claims were not accompanied by any claim for monetary relief.  The court's reasoning was four-pronged: (1) the boards traditionally exercised that jurisdiction; (2) nothing in the legislative history of the CDA indicated an intent to take it away; (3) default terminations are "money-oriented"; and (4) some forum should be available for these claims.  Hinton, 19 PUB. CONT. L.J. at 180-81.

Given the Federal Circuit's decision in Malone, in 1988 Judge Turner of the Claims Court concluded that default termination claims were within that court's jurisdiction.  Claude E. Atkins, 15 Cl. Ct. at 647; see also Crippen & Graen Corp. v. United States, 18 Cl. Ct. 237, 239-40 (1989); Russell Corp. v. United States, 15 Cl. Ct. 760, 761-62  (1988); Postscript: Claims Court Jurisdiction Over Default Termination Claims, 3 NASH & CIBINIC REP. ¶ 15 (1989) ("At last one of the judges of the Claims Court got it right.").

---

[4]  The Federal Courts Improvement Act of 1982 split the Court of Claims into an appellate tribunal, the United States Court of Appeals for the Federal Circuit, and a trial court, the Claims Court.  Pub. L. No. 97-164, 96 Stat. 25 (codified as amended in scattered sections of 28 U.S.C.).   In defining this new trial court's jurisdiction, Congress authorized it to award equitable relief in pre-award bid protest cases.  Pub. L. No. 97-164, § 133(a), 96 Stat. 25, 40 (1982); see also United States v. John C. Grimberg, Inc., 702 F.2d 1362, 1367 (Fed. Cir. 1983) (interpreting the newly-passed section (a)(3) as a congressional grant of equitable power in pre-award bid protest cases).  This authority was expanded to post-award bid protest cases in the Administrative Dispute Resolution Act.  28 U.S.C. § 1491(b); Pub. L. No. 104-320, 110 Stat. 3870 (1996).

Three years later, the Federal Circuit decided <u>Overall Roofing & Construction Inc. v.</u> <u>United States</u>, 929 F.2d 687 (Fed. Cir. 1991), concluding that the Claims Court lacked jurisdiction to hear cases solely contesting the propriety of default terminations because those lawsuits did not include any associated request for money damages and therefore were not claims within the meaning of the CDA.

In that case, not unlike plaintiff here, Overall Roofing obtained a roof repair contract for buildings at a naval base.  The Government was dissatisfied with Overall Roofing's work and demanded removal and reconstruction, but the company refused.  The contracting officer then terminated the contract for default. Overall Roofing sued, protesting the propriety of the default termination.  The Federal Circuit relied on previous cases' definition of the word "claim" as used in the Tucker Act and the expansion of the court's bid protest jurisdiction in holding that the Claims Court possessed jurisdiction only over "suits on claims, and those claims are limited to demands for money presently due and owing."  <u>Id.</u> at 689.  Thus, the court found that Overall Roofing's complaint did not belong in the Claims Court.

Partly in response to <u>Overall Roofing</u>, Congress began considering legislation to restore jurisdictional equality between the boards and the court.  Court of Federal Claims Technical and Procedural Improvements Act: Hearing on S. 2521 Before the Subcomm. on Courts and Admin. Practice of the S. Comm. on the Judiciary, 102d Cong. 68-70 (1992) ("1992 Hearings") (statement of John S. Pachter, Chair, Public Contract Law Section, American Bar Association); <u>id.</u> at 104-07; (statement of Clarence T. Kipps, Jr., Chairman, U.S. Claims Court Advisory Council) ("By holding that the Claims Court could only decide <u>monetary</u> contract claims, the <u>Overall Roofing</u> court focused solely on the term 'claim' and the historic use of that term in the Tucker Act, and ignored that in addition to providing jurisdiction over claims, the CDA granted the Claims Court jurisdiction to hear any 'dispute with a contractor' under the CDA.  In so doing the Court also recreated a chaotic distinction between the Court and the boards like the one that existed before the CDA.").  Senator Heflin suggested adding the phrase "including declaratory judgment" to 28 U.S.C. § 1491(a)(2) in order to "allow the court to address default termination claims unaccompanied by a claim for money damages."  138 Cong. Rec. 8119 (1992).

During hearings on this bill, Loren A. Smith, Chief Judge of the Claims Court (soon to become the Court of Federal Claims), supported the amendment "to make it plain that the jurisdiction of the Claims Court extends to all claims and disputes under the Contract Disputes Act which are money oriented or money related but which, strictly speaking, may not be ones for money presently due."  1992 Hearings at 8 (statement of the Hon. Loren A. Smith).  The change, he said, was directed at the <u>de facto</u> divergent authority of the court and the agency boards, which Congress, in enacting the CDA, had intended to be "virtually identical": "This bill will restore this original jurisdictional parity."  <u>Id.</u>  The provision was especially directed at default terminations, which "virtually always ha[ve] money implications (<u>e.g.</u>, lost profit, cost of work in progress, potential liability for the government's procurement costs) and always ha[ve] an adverse impact on a contractor's standing and eligibility for future contracts in ways that are money related."  <u>Id.</u> at 9.

The Department of Justice opposed the proposed amendment on the ground that it "would allow a contractor to seek judicial review of the actions of government officials with respect to the performance of continuing contracts before the contractor suffered any monetary injury and, thereby, invite judicial second guessing of the actions of government officials, who are experienced in the administration of contracts and administrative resolution of contract disputes, that could easily interfere with the administration of continuing contracts." Id. at 24-25 (statement of Stuart E. Schiffer, Deputy Assistant Attorney General, Civil Division, Department of Justice).  At the very least, the Government asserted, "if the provision is intended to allow the Claims Court to entertain certain claims cognizable before the boards of contract appeals, the provision should be limited to challenges by a contractor to a decision of a contracting officer to terminate a contract for default." Id. at 25.

The Court of Federal Claims Technical and Procedural Improvements Act was later subsumed into the larger Federal Courts Administration Act, S. 1569, 102d Cong (1992). Ultimately, the last sentence of § 1491(a)(2) was amended to read: "The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, or other nonmonetary disputes on which a decision of the contracting officer has been issued under Section 6 of that Act."  Senator Heflin explained that this would

> amend the Tucker Act to clarify the power of the Court of Federal Claims to hear
> appeals of all contracting officers' final decisions, regardless of whether the
> dispute involves a claim for money currently due.  The amendment will restore the
> option of appealing any final decision to either the Court of Federal Claims or
> agency board of contract appeals as was intended in the Contract Disputes Act.
> The amendment does not authorize contractors to seek declaratory judgments
> from the Court of Federal Claims in advance of a dispute and final decision, and
> will not permit contractors to seek injunctions or declaratory judgments that
> would interfere with the contracting officer's right to direct the manner of
> performance under the changes clause.  A contracting officer's final decision
> under the Contract Disputes Act will remain a jurisdictional prerequisite to review
> by the Court of Federal Claims.

138 Cong. Rec. S17799 (daily ed. Oct. 8, 1992); see also 1992 Hearings at 104-07 (statement of Clarence T. Kipps, Jr., Chairman, U.S. Claims Court Advisory Council) ("Authorizing the Claims Court to grant declaratory relief is necessary.  A final decision on contract disputes would remain a prerequisite for litigation in the court.  It would not disrupt the procurement process or open a floodgate of litigation.  Rather, the bill would restore the right of the contractor to choose between the Court and the boards in any appeal of a final decision—a right that was granted to contractors in the CDA.").

8

Congress therefore rejected the comments of the Department of Justice suggesting strict limitations on the power of the court to resolve nonmonetary disputes. Congress neither provided for general declaratory judgment jurisdiction in the Court of Federal Claims nor limited the court's authority over CDA nonmonetary claims to disputes over the propriety of default terminations. Instead, Congress provided a general grant of jurisdiction over CDA nonmonetary disputes, along with a non-exclusive list of the types of disputes over which jurisdiction was intended.

*Performance Evaluations*

In addition to this evolving grant of jurisdiction, another trend is relevant here: the rise of the performance evaluation. In the distant past, government contracts were typically awarded to the low bidder, and "[i]t was not unusual for a contractor to be terminated for default on one contract and shortly therafter receive an award of another contract." Thomas J. Kelleher, et al., CONSTR. DISP. PRAC. GUIDE § 5.06 (2d ed. 2002). But "federal agencies are placing more and more importance on a prospective contractor's past performance history." Id.

Since the 1990s, the FAR has "required formal evaluations of contractor performance, which have become an inherent part of source selection decisions." Jonathan Cain, Infotech and the Law: Negative Performance Review? You Now Have Relief, WASHINGTON TECHNOLOGY, Dec. 31, 2004 ("It is remarkable, then, that given the importance of these evaluations, contractors have been powerless to challenge unfair or punitive reviews."). The regulations require a contracting agency to prepare a performance evaluation report for each construction contract of at least $550,000 and to send each contractor performance evaluation report to the central database immediately upon its completion, where it remains on file for six years. FAR § 36.201; J.C.N. Constr. Co. v. United States, 60 Fed. Cl. 400, 408 (2004). A procuring agency is required to review this past performance history when considering that contractor for subsequent contract awards. FAR § 236.201; Procedures, Guidance and Information ("PGI") 236.201(c); see also FAR § 15.305(a)(2)(i).

When a contractor challenges a past performance review after being rejected in a subsequent solicitation, the agency action is given the "greatest deference possible." Westech Int'l, Inc. v. United States, 79 Fed. Cl. 272, 293-94 (2007). The contractor may not have an opportunity to attempt to explain a negative rating. Bannum, Inc. v. United States, 60 Fed. Cl. 718, 729 (2004), rev'd on other grounds, 404 F.3d 1346 (Fed. Cir. 2005); TLT Const. Corp. v. United States, 50 Fed. Cl. 212, 215 (2001) (finding violation of regulation in failing to discuss past performance evaluations but no prejudice to contractor). Even when the agency violates its regulations by assigning a lower past performance rating to a contractor than the contractor's history actually warrants, the contractor must meet the high bar of being able to demonstrate specific prejudice resulting from that erroneous rating. Precision Images, LLC v. United States, 79 Fed. Cl. 598, 624-25 (2007) (no performance history counted as negative performance history).

This creation of mandatory performance reviews, databases archiving those reviews, and the requirement to consider those archived materials in future contract awards means that a negative review is potentially devastating to a contractor, who may have no opportunity—or very little opportunity—to mitigate the impact that review will have on future awards.   There are sound reasons, as Judge Sweeney recently explained, to address performance evaluations as issues of contract performance rather than as part of a bid protest when the contractor seeks future government contracts.  BLR Group of Am. v. United States, No. 07-579C, at 17 (Fed. Cl. Nov. 25, 2008).

*Has the Plaintiff Asserted a "Claim"?*

The Tucker Act provides jurisdiction for this Court over "any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including . . . other nonmonetary disputes on which a decision of the contracting officer has been issued" under Section 6 of the CDA.  28 U.S.C. § 1491(a)(2).  As previously noted, the Federal Circuit in Overall Roofing instructed that the phrase "any claim by or against, or dispute with a contractor" included "only suits on claims, and those claims are limited to demands for money presently due and owing."  929 F.2d at 689.  But after the 1992 amendment to the Tucker Act, the Court possesses jurisdiction over "any claim . . . including . . . other nonmonetary disputes on which a decision of the contracting officer has been issued."  In order to qualify for jurisdiction in this Court over nonmonetary disputes there must be a "decision of the contracting officer"; to acquire such a decision, the contractor must submit a "claim" to the contracting officer.  See, e.g., 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.").  Indeed, submission of a claim to the contracting officer and obtaining a decision on that claim is a "jurisdictional prerequisite" to an action in this Court seeking review of the contracting officer's decision.  BLR Group of Am. v. United States, No. 07-579C, at 18 (Fed. Cl. Nov. 25, 2008).

Determining jurisdiction in this Court, therefore, requires examining whether there is a "claim" that was submitted to the contracting officer and that is now before this Court.  Because the CDA does not define a claim, we look to the regulatory definition.  H.L. Smith, Inc. v. Dalton, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995).  The FAR broadly defines a "claim" as  "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract."  FAR § 52.233-1(c).  Combining the jurisdictional requirements for this Court with the items required by regulation for a "claim" in this nonmonetary dispute, the Court must determine whether there is (1) a decision of the contracting officer; (2) on a written demand; (3) made as a matter of right; (4) requesting relief arising under or relating to the contract.

The first and second items are easily satisfied in this case.  There was clearly a final decision of the contracting officer on a written demand.  On March 22, 2006, the Government issued its proposed final evaluations of Todd's work, Ex. A to Pl.'s Supp. Br., and on April 20,

10

2006, Todd submitted its comments protesting those evaluations.  Ex. B to Pl.'s Supp. Br.  The Government issued final evaluations on July 21, 2006, Ex. C to Pl.'s Supp. Br., and Todd submitted both a claim and a supplemental claim to the Department of the Army, asserting regulatory violations in the preparation of the evaluations and lack of factual accuracy.  Exs. D & E to Pl.'s Supp. Br.  On April 25, 2007, Ms. Miles wrote to Todd, indicating the letter "serves as my final decision regarding your performance on the above Task Order" with a subject line "Final Contracting Officer Decision."  Ex. F to Pl.'s Supp. Br.  This is a "final decision" of the "contracting officer" upon a "written demand."

And the Court further concludes that plaintiff made that written demand "as a matter of right."  Federal regulations require that for construction contracts the "contracting activity shall evaluate contractor performance and prepare a performance report" "in accordance with agency procedures," and that the report must be "reviewed to ensure that it is accurate and fair."  FAR § 36.201.  The Corps has set forth detailed procedures to be followed in assessing contractor performance, with additional steps to be taken when the rating will be unfavorable.  Army Corps of Engineers Regulation 415-1-17(5)(c)(1).  In this case, Todd alleges that those procedures were not followed and that the evaluations it received were not, in fact, accurate and fair.  To the extent plaintiff asserts that when the Government prepares a performance evaluation that will be made part of the record upon which its future submissions will be judged, it is entitled to an accurate and fair performance evaluation prepared in accordance with the regulations, it makes that request "as a matter of right."  Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1265 (Fed. Cir. 1999) (observing that the "claim must be a demand for something due or believed to be due rather than, for example, a cost proposal for work the government later decides it would like performed"); BLR Group of Am. v. United States, No. 07-579C, at 10 (Fed. Cl. Nov. 25, 2008).

This leaves only the question whether Todd's complaint regarding its performance evaluations requests relief arising under or relating to the contract.  The defendant takes the position that no nonmonetary request for relief arises under or relates to the contract unless it requires interpretation of specific language in the contract or is "essentially a 'substitute' for monetary relief."[5]  Def.'s Mot. at 5-7.  Given that neither party contends there is language in Todd's contract regarding performance evaluations, the Government argues, citing Alliant[6] and Garrett v. General Electric Company, 987 F.2d 747 (Fed. Cir. 1993), that this Court may hear Todd's claims only if they request a "non-monetary substitute for monetary relief."  Def.'s Mot. at 7 (quoting Garrett, 987 F.2d at 750-51).  The Court notes, first of all, that the power of the Court

_____

[5]  As an initial matter, FAR § 33.210 authorizes contracting officers "to decide or resolve all claims arising under or relating to a contract subject to the [Contract Disputes] Act."  The very fact that the contracting officer issued a final decision on the claim itself tends to show that the claim arose under or related to the contract.

[6]  Alliant, the Government elsewhere contends, "concerns the meaning of the phrase 'as a matter of right' and therefore does not shed any light upon the meaning of 'relating to the contract.'"  Def.'s Supp. Br. at 5.

11

to hear nonmonetary claims is not directly relevant to whether a request for relief "arises under or relates to the contract."

To the extent the Government argues that a request for relief "arising under or relating to" the contract is one which requests a "non-monetary substitute for monetary relief" the Court has two concerns. First, it seems exceedingly odd to decide whether a request for relief "arises under" the contract by looking solely at the type of relief requested rather than the substance of the claim; and second, the cases defendant cites fail to support its argument. Garrett was briefed and argued prior to the 1992 amendments to the CDA, at a time when the jurisdictional reaches of the contract boards of appeals and the Court of Claims were questionable and in flux. 987 F.2d at 750. In that case, the Government discovered a defect in engines after it accepted delivery of the product, and required the contractor to correct the problem at no additional cost. The questions presented were (1) whether this was a proper Government claim under the CDA; and (2) whether the Armed Services Board of Contract Appeals possessed the authority to provide nonmonetary relief. The Federal Circuit, in light of the recently passed statutory amendments giving the Board the same jurisdiction as the Court of Federal Claims, found that the Board had "correctly extended the rationale in Malone to cover the nonmonetary substitute for monetary relief requested in this case." Id. at 750-51. Two major distinctions present themselves. First, the case involves the jurisdiction of the contract boards of appeals, not the Court of Federal Claims; and second, the opinion merely observes that the boards' authority includes providing a "non-monetary substitute for monetary relief." It does not purport to set up a rule regarding the outer bounds of the boards' jurisdiction. Indeed, Alliant cites Garrett for the proposition that the boards of contract appeals "have authority under the CDA . . . to grant declaratory relief when appropriate." 178 F.3d at 1270 (emphasis added). In Alliant, the Government sought to judicially narrow this Court's authority to grant nonmonetary relief, asking the Federal Circuit to impose a non-statutory "prudential" limitation on the expansive language of the statute. The appeals court declined to do so. Id. at 1270-71. Alliant does not support the Government's argument that the only claims for relief arising under or relating to the contract are those that seek money or a nonmonetary substitute for money.[7]

Defendant further contends that the meaning of "relating to the contract" was "already resolved" by Applied Companies v. United States, 144 F.3d 1470 (Fed. Cir. 1998). Def.'s Supp. Br. at 5. Applied Companies involved a dispute between the Government and a contractor, who had several government contracts, over setting off an accidental government overpayment (the result of a computer error) on one contract against a debt on another contract. One of the arguments the contractor advanced was that the Government had to obtain a final decision of the contracting officer on the accidentally overpaid contract before applying the disputed funds elsewhere. 144 F.3d at 1477-78. The plaintiff alleged that the overpayment was "related to

---

[7] Moreover, a poor performance evaluation is, at minimum, "money related." A false or improper evaluation prejudices the contractor in that a poor evaluation "always has an adverse impact on a contractor's standing and eligibility for future contracts in ways that are money related." 1992 Hearing at 9 (statement of the Hon. Loren A. Smith).

billing and that the setoff was therefore a claim relating to that contract debt." Id. at 1478.  The Federal Circuit disagreed, because "Congress's decision to limit the applicability of the Act's procedures to those claims 'relating to' a contract indicates that the claim at issue must have some relationship to the terms or performance of a government contract." Id. (emphasis added). Requiring the Government to comply with the CDA to recover the overpayment "would not serve any of the purposes underlying the Act" because the contractor "did not invoice the government for the credited amounts, nor did the government intend to pay Applied those sums for its work under the contract." Id.  The CDA provides an informal mechanism for resolving disputes, and there was "no dispute as to the government's entitlement to the return of the mistaken overpayments . . . [a]ccordingly, the government did not need to obtain a contracting officer's final decision regarding its entitlement to the erroneous overpayments." Id.  That is, an accidental overpayment that everyone acknowledged was not made pursuant to the contract and had to be returned to the Government had no relationship to the terms or performance of the contract.

It simply defies reason to contend, as the Government does, that Todd's assertion that its performance evaluations were inaccurate and procedurally improper "does not bear any relationship to the terms or performance of the contract." Def.'s Supp. Br. at 3.  Indeed, defendant itself asserts on the next page of its brief that "although Todd Construction's claim for withdrawal of its performance evaluations bears some relationship to its contract with the United States, it does not relate to that contract as it does not concern the CDA, the FAR, or any contractual terms."[8]  Def.'s Supp. Br. at 4.  The Court has already concluded that Todd's performance evaluation claim "concerns" the CDA and the FAR in deciding that Todd made its claim as a matter of right.  Thus, defendant's brief essentially concedes that Todd's claim for relief "bears some relationship" to the contract.  If there had been no contract, there would be no evaluations.  The subject of the evaluations is the quality of the contractor's performance under the terms of the contract (and, of course, any modifications).  As a matter of logic, a performance evaluation relates to the contractor's performance under the contract, in the same way that any evaluation relates to the thing evaluated.

For further guidance, the Court looks to the Federal Circuit's recent decision in Distributed Solutions v. United States, 539 F.3d 1340, 1345-46 (2008) reh'g denied, No. 07-5145 (Fed. Cir. Dec. 3, 2008), which interpreted the phrase "in connection with a procurement" to determine the breadth of the Court's bid protest jurisdiction.  The appeals court noted that the phrase "in connection with" is "very sweeping in scope" and held that it included claims that had "a connection with any stage of the federal contracting acquisition process, including the process

---

[8]  The latter argument relies upon Transamerica Insurance Co. v. United States, 31 Fed. Cl. 602 (1994), which notes that "an equitable subrogation claim is related to the underlying contract."  In that case, however, the analysis was complicated by the presence of a defaulting contractor and takeover agreement with the United States.  The case is simply factually inapposite.

for determining a need for property or services.'"[9] Id. at 1345-46.  The Court sees no reason why the broad phrase "in connection with" would be read literally in order to liberally protect a contractor's rights in the pre-procurement phase, but the equally open-ended "arising under or relating to" should be subject to a crabbed and illogical interpretation in the performance and post-performance phases.  Alliant, 172 F.3d at 1268 ("In defining the jurisdiction of the Court of Federal Claims over CDA disputes, Congress has chosen expansive, not restrictive, language.").

If a statutory basis for jurisdiction exists, the Court is obligated to exercise it.  Alliant, 172 F.3d at 1270.  Given the increasing importance of performance reviews and prejudice to contractors from erroneous ratings, there should be some judicial forum available to consider challenges to the fairness and accuracy of evaluations.  Malone, 849 F.2d at 1445 (same for default terminations).  Allowing the contractor to appeal an adverse decision of the contracting officer on a negative performance evaluation "does not authorize contractors to seek declaratory judgments from the Court of Federal Claims in advance of a dispute and final decision, and will not permit contractors to seek injunctions or declaratory judgments that would interfere with the contracting officer's right to direct the manner of performance under the changes clause." 138 Cong. Rec. S17799 (daily ed. Oct. 8, 1992) (statement of Senator Heflin).  Accordingly, the Court holds that Todd has satisfied the "jurisdictional prerequisite" of having submitted a CDA claim to the contracting officer and having obtained a final decision on that claim.  England v. The Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004); see also BLR Group of Am. v. United States, No. 07-579C, at 18 (Fed. Cl. Nov. 25, 2008).  The Court thus possesses jurisdiction over plaintiff's action.

*Boards of Contract Appeals*

The boards of contract appeals, as the Government observes, have considered several challenges to performance evaluations and have declined to hear those cases.  In the same year Overall Roofing was decided, the boards of contract appeals were presented with their first challenge to a performance evaluation.  In Konoike Construction Co., ASBCA No. 40910, 91-3 BCA ¶ 24170 (1991), the contractor appealed to the board directly from a performance evaluation, apparently without first filing a protest with the contracting officer.  The administrative judge found that a performance evaluation, standing alone, was not a "final decision" upon a contractor's written claim as required by the CDA before any appeal to the board.  41 U.S.C. § 605(a).  Therefore, no claim existed over which the board possessed jurisdiction.  Even if there were a claim, the board lacked the authority to order the contracting officer to amend a performance evaluation, because that is "in the nature of a request for injunctive relief or specific

---

[9] The Supreme Court has defined the phrase "relates to" for the purposes of determining ERISA preemption as a law that "has a connection with or reference to" an ERISA plan. California Div. of Labor Standards Enf. v. Dillingham Constr., 519 U.S. 316, 324 (1997) (quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125 (1992) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983))).  Thus, the Supreme Court has treated the meaning of the phrase "connection with" as substantially identical to that of "relate to."

performance and unavailable from the Board." <u>G. Bliudzius Contractors</u>, ASBCA No. 42365, 92-1 BCA ¶ 24605 (1991) ("The performance evaluation is not a government claim, nor is appellant's request that the contracting officer change the evaluation a contractor claim. Furthermore, appellant seeks injunctive relief, which is beyond the scope of remedies we are empowered to grant.") (internal citation omitted).

Although <u>Konoike</u> involved a procedurally improper appeal to the board before any protest to the contracting officer, many subsequent board decisions merely cite <u>Konoike</u> for the proposition that a contractor's request to change a performance evaluation is not a "contractor claim." <u>G. Bliudzius Contractors</u>, ASBCA No. 42365, 92-1 BCA ¶ 24605 (1991) ; <u>TLT Constr. Corp.</u>, ASBCA No. 53769, 02-2 BCA ¶ 31969 (2002) ("A performance evaluation under a contract is an administrative matter not a Government claim, and a contractor's request that a contracting officer change an evaluation is not a contractor claim."); <u>Franklin's Cleaning & Supply Co. v. GSA</u>, GSBCA No. 16527, 06-1 BCA ¶ 33139 (2005); <u>Aim Constr.</u>, ASBCA No. 52540, 07-1 BCA ¶ 33466 (2006).  Given the lack of explicit reasoning, the reliance on the terms of the particular contracts at issue, and the factual difference between <u>Konoike</u> and this case, where there is a final decision from the contracting officer, Ex. F to Pl.'s Supp. Br., the Court is unpersuaded by these cases.  <u>See also</u> <u>BLR Group of Am. v. United States</u>, No. 07-579C, at 15 (Fed. Cl. Nov. 25, 2008).

The second ground upon which the boards of contract appeals rest their decisions declining to hear disputes relating to performance evaluations is that a request to vacate or change a performance evaluation is a request for injunctive relief or specific performance which the board lacks the authority to grant.  <u>Tempo, Inc.</u>, ASBCA No. 37589, 93-1 BCA ¶ 25276 (1992); <u>Techno Engineering & Constr., Ltd.</u>, ASBCA No. 42810, 94-1 BCA ¶ 26340 (1993); <u>Cardiometrix</u>, ASBCA No. 50897, 97-2 BCA ¶ 29319 (1997).  The Court requests further briefing on the issue of available remedies, as set forth below.  To the extent that the boards' decisions rest upon a perception that they are unable to offer injunctive relief, that is not the precise issue presently confronting this Court—as noted above, the Court only addresses today whether the plaintiff's suit challenges the contracting officer's decision on a "claim" within the meaning of the CDA and is thus within the jurisdiction of this Court.  Moreover, as noted above, the boards' remedial powers derive from the Court's, not the other way around.  41 U.S.C. § 607(d).  Thus, it would be backward for the Court to find that because the board may (or does) not provide a remedy, the Court is also precluded from doing so.

*Further Briefing on Availability of Remedies*

Whether a complaint falls within this court's jurisdiction under the CDA and whether it makes assertions upon which the Court may provide relief are two separate questions.  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 89 (1998); <u>Fisher v. United States</u>, 402 F.3d 1167, 1175 (Fed. Cir. 2005) ("Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted.").  Defendant's motion to dismiss focuses on the argument that the Court lacks jurisdiction because plaintiff's action does not challenge a decision of the contracting officer on a "claim" within the meaning of the CDA, and that is the issue the Court today decides in favor of plaintiff.  As detailed above, the Court possesses jurisdiction over appeals from denials of CDA claims, including "nonmonetary disputes on which a decision of the contracting officer has been issued."  28 U.S.C. § 1491(a)(2).  A CDA claim and contracting officer decision on that claim are present here; therefore, this Court has jurisdiction, and the motion to dismiss under Rule 12(b)(1) must be denied.

Todd's complaint requests a "judicial determination that the Corps' final decision is unlawful and should be set aside"and "[a]n order directing the Corps to remove the final performance evaluations from CCASS," along with such other and further relief as the Court might find proper.  Complaint, Prayer for Relief.  The relief that Todd seeks, therefore, is (1) a declaration that the Corps' refusal to rescind the performance evaluations was unlawful and should be set aside [10] and (2) an order requiring the Corps to alter the CCASS database.  Whether this relief is available to Todd in this Court has not been adequately briefed, and the Court declines to decide the issue at this time.

<u>Declaratory Relief</u>

Although the Court will request further briefing on the issue, it appears that because "[j]urisdiction is power to declare the law," <u>Ex Parte McCardle</u>, 74 U.S. (7 Wall) 506, 514 (1868),

---

[10]  The Court recognizes that a mere declaration that the decision of the contracting officer should be set aside may be ineffective, and an order requiring the decision to be set aside is in the nature of injunctive relief.  For the purposes of the supplemental briefing, however, the Court finds it conceptually more helpful to divide the plaintiff's requests for relief into purely declaratory and purely injunctive portions.  Thus, although the parties may wish to make arguments about, for example, whether a request for an order declaring that the Corps' decision is unlawful and should be set aside is actually injunctive, those arguments should be contained within the portion of the supplemental briefing regarding injunctive relief (question two below), rather than supplanting the section concerning declaratory relief.  The parties are directed to assume in addressing the Court's inquiry regarding declaratory relief that some portion of plaintiff's complaint requests purely declaratory relief.

the presence of jurisdiction over this nonmonetary dispute pursuant to the CDA means that the Court possesses authority to provide declaratory relief in the present circumstances.

The parties may still differ over whether the complaint states a claim upon which relief can be granted. Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993) ("[T]he existence of jurisdiction does not confirm the court's ability to supply relief."). The Court can possess the authority to undertake an action but the discretion not to do so. Alliant, 178 F.3d at 1271; Murphy, 993 F.2d at 872. For example, in CW Government Travel, Inc. v. United States, 63 Fed. Cl. 369 (2004), Judge Hewitt concluded that plaintiff's complaint properly sought review of the contracting officer's decision on a CDA claim and was therefore within the court's jurisdiction. However, Judge Hewitt separately analyzed the question whether declaratory relief should be awarded, focusing on "whether the claim involve[d] a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests." Id. at 387 (quoting Alliant, 178 F.3d at 1271); see also Tiger Natural Gas, Inc. v. United States, 61 Fed. Cl. 287 (2004).

Injunctive Relief

With respect to injunctive relief, although this Court does not have general equity jurisdiction, the Tucker Act provides that, at least in cases based on actions for monetary relief, the court may issue such orders as are necessary "[t]o provide an entire remedy and to complete the relief afforded by the judgment," including "as an incident of and collateral to any such judgment, . . . correction of applicable records." 28 U.S.C. § 1491(a)(2). It is upon this authority that Judge Lettow relied in Record Steel when he observed that the court could offer a remedy to a contractor complaining of a wrongful performance evaluation due to the "explicit grant of jurisdiction in the Tucker Act to issue injunctive and declaratory relief in specified areas," particularly to correct administrative records or remand a matter to the agency. Record Steel and Constr. v. United States, 62 Fed. Cl. 508, 520 (2004).

In Record Steel, however, as defendant points out, there was an independent claim for monetary relief. To the extent that this Court may issue injunctive relief in a contract case only "as an incident of and collateral to" a monetary judgment, Record Steel presents a different question than the case presently before the Court. For example, if an order to correct records or remand requires an associated judgment for money, then the Court's power to provide relief to Todd could be limited to issuing a declaration of rights resolving the parties' nonmonetary dispute. If, on the other hand, the Court possesses injunctive power, then Todd might be able to receive all the relief it seeks.

Now that the presence of jurisdiction has been determined, the Court requests additional briefing from the parties with respect to the nature and scope of the relief the Court has the power to provide upon plaintiff's claim and with respect to the proper standard of review. 28 U.S.C. § 1491(a)(1) & (2) read as follows:

17

(a)(1) The United States Court of Federal Claims shall have
jurisdiction to render judgment upon any claim against the United
States founded either upon the Constitution, or any Act of Congress
or any regulation of an executive department, or upon any express
or implied contract with the United States, or for liquidated or
unliquidated damages in cases not sounding in tort. . . .

(2) To provide an entire remedy and to complete the relief afforded
by the judgment, the court may, as an incident of and collateral to
any such judgment, issue orders directing restoration to office or
position, placement in appropriate duty or retirement status, and
correction of applicable records, and such orders may be issued to
any appropriate official of the United States.  In any case within its
jurisdiction, the court shall have the power to remand appropriate
matters to any administrative or executive body or official with such
direction as it may deem proper and just.  The Court of Federal
Claims shall have jurisdiction to render judgment upon any claim by
or against, or dispute with, a contractor arising under section
10(a)(1) of the Contract Disputes Act of 1978, including a dispute
concerning termination of a contract, rights in tangible or intangible
property, compliance with cost accounting standards, and other
nonmonetary disputes on which a decision of the contracting officer
has been issued under section 6 of that Act.

The Court asks the parties to focus closely on this statutory language along with any other
relevant authority in addressing the following questions, assuming, solely for the purposes of
responding to the Court's questions, that the Court would ultimately rule in plaintiff's favor.  Each
inquiry is to be addressed separately, with supporting analysis and authorities.  Where the Court
has asked the parties to assume a condition (e.g., a declaration of rights or a finding in favor of
plaintiff) the briefing should focus on the question, not the predicate condition.  No adverse
inference will be drawn from addressing the question as posed by the Court.  Accordingly, the
Court **ORDERS** that the parties brief the following questions:

1.  Declaratory Relief:  Todd seeks a declaration "that the Corps' final decision is
    unlawful and should be set aside."

    a.  The Court has held that the plaintiff asserts a claim within the meaning of
        the CDA and that plaintiff's action is within the jurisdiction of this Court.
        Does the Court possess authority to issue the declaratory relief sought by
        plaintiff?  Why or why not?

    b.  Under Alliant and related authorities, is the exercise of that authority
        appropriate here?

18

    c.      Assuming that the Court lacks the authority in this case to order correction of records or other injunctive relief, would a declaration of rights serve a useful purpose?  If it would not, what is the significance of that circumstance?

    d.      Assuming that the Court were to issue a declaration of rights in resolving plaintiff's action, does the Court possess authority to then remand the matter to the Corps for further action?

    e.      Assuming that the Court lacks the authority in this case to order correction of records or injunctive relief, would a remand as described in the preceding subparagraph serve a useful purpose?  If it would not, what is the significance of that circumstance?

2.    <u>Injunctive Relief</u>: Todd also requests "[a]n order directing the Corps to remove the final performance evaluations from CCASS."

    a.      Does the Court possess authority to issue such an order?  Why or why not?

    b.      Does the Court possess authority to order the correction of plaintiff's performance evaluations, or is that power limited to situations where plaintiff requests monetary damages?  If such authority exists in this case, would it include the authority to order withdrawal of the performance evaluations at issue from CCASS?

    c.      Does the Court possess authority to provide other injunctive relief in resolving the nonmonetary dispute that is the subject of plaintiff's action?

        An additional issue upon which the Court requests further guidance is the standard of review the Court should apply in considering plaintiff's challenge to the contracting officer's decision on plaintiff's claim.  Both parties' supplemental briefs indicate that an "arbitrary and capricious" standard is appropriate, Def.'s Supp. Br. at 6-8, Pl.'s Supp. Br. at 3-6, but 41 U.S.C. § 609(a)(3) appears to direct the Court to review appeals from contracting officers' decisions <u>de novo</u>.  Neither party cites to § 609(a)(3).  The Court therefore **FURTHER ORDERS** the parties to submit briefing on the following questions:

3.    <u>Standard of Review</u>:

    a.      Does 41 U.S.C. § 609(a)(3) apply here?  Why or why not?

    b.      Taking into account 41 U.S.C. § 609(a)(3), what standard of review should the Court apply in considering plaintiff's challenge to the contracting officer's decision?

c.      What are the statutory bases for a limited review of the administrative
record as advocated in Def.'s Supp. Br. at 7-8?

**CONCLUSION**

In view of the foregoing, defendant's motion to dismiss plaintiff's complaint pursuant to
Rule 12(b)(1) is **DENIED.**   Because the Court concludes that it has jurisdiction over plaintiff's
complaint, 28 U.S.C. § 1631 is inapplicable.   Skillo v. United States, 68 Fed. Cl. 734, 744 (2005)
(noting that transferor court must lack subject matter jurisdiction).  Thus, the plaintiff's motion to
transfer the case to a district court is **DENIED**.  As discussed above, the Court requests further
briefing before ruling on defendant's 12(b)(6) motion.  The Court will be in touch with counsel to
schedule a status conference to discuss an appropriate briefing schedule, including whether the
briefs should be simultaneous or sequential.

**IT IS SO ORDERED.**

 s/ George W. Miller
GEORGE W. MILLER
Judge