# In the United States Court of Federal Claims

No. 07-324 C
Filed July 22, 2009
TO BE PUBLISHED

|  |  |
|---|---|
| TODD CONSTRUCTION, L.P., f/k/a, TODD CONSTRUCTION CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Court of Federal Claims Rule 12(b)(6); failure to state a claim upon which relief can be granted; performance evaluation; Tucker Act, 28 U.S.C. § 1491(a)(2); non-monetary contract dispute; court authority to issue declaratory judgment; court authority to remand to agency for further action with "proper and just" direction; Contract Disputes Act of 1978, 41 U.S.C. § 609; *de novo* review; matters within discretion of agency; abuse of discretion |

Robert L. Magrini, Hayes Magrini & Gatewood, Oklahoma City, Oklahoma, for plaintiff.

Matthew H. Solomson, Trial Attorney, Franklin E. White, Jr., Assistant Director, Jeanne E. Davidson, Director, Jeffrey S. Bucholtz, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Mary L. Ashby, United States Army Corps of Engineers, Savannah, Georgia, of counsel.

**OPINION AND ORDER**

GEORGE W. MILLER, Judge

      Todd Construction sued in this court alleging that the negative performance evaluations it received after repairing the roofs of buildings at the Seymour Johnson Air Force base were procedurally improper, unfair and inaccurate, and that Todd was legally entitled to procedurally proper, fair and accurate evaluations. The Government moved to dismiss Todd's complaint as failing to assert a "claim" within the meaning of the Contracts Disputes Act ("CDA"), which, if true, would have deprived the court of jurisdiction over the complaint, as well as failing to state a claim upon which relief could be granted. The Court denied the motion to dismiss for lack of jurisdiction on December 9, 2008, but deferred ruling on the defendant's motion to dismiss for failure to state a claim pending further briefing. *Todd Constr. L.P. v. United States*, 85 Fed. Cl. 34 (2008). For the reasons discussed below, the Court has concluded that its decision on

defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") should be held in abeyance until August 12, 2009. If plaintiff does not file a motion for leave to amend its complaint in accord with this opinion by that date, the Court will grant defendant's motion.

I.      **Factual Background**

In 2003, Todd Construction received two task orders from the United States Army Corps of Engineers ("Corps") for roof repair of buildings at the Seymour Johnson Air Force Base in North Carolina. *Todd*, 85 Fed. Cl. at 36. The attachments to plaintiff's supplemental briefing (but not the complaint) indicate that Todd had significant problems in completing the work including one subcontractor's refusal to perform, a replacement subcontractor's termination after it altered structural drawings and fabricated an engineer's stamp, and various disputes over delays and quality control issues Todd alleged to have been caused by the Government. *See, e.g.,* Ex. D to Pl.'s Supp. Br. (docket entry 18-5, Feb. 29, 2008). After the Corps issued proposed final evaluations rating Todd's overall performance on the work as unsatisfactory, Todd explained in its comments to the contracting officer (but not in the complaint) that it felt these ratings were unmerited because although "this project has had more problems than almost any other we have ever worked on in the past" and "the problems with subcontractors made it difficult to develop and submit in a timely fashion a meaningful construction schedule," there were nonetheless "other problems . . . that severely impacted Todd's progress." *Todd*, 85 Fed. Cl. at 36; Ex. B to Pl.'s Supp. Br. (docket entry 18-3, Feb. 29, 2008); *see also id.* (explaining that "[g]iven all of the unlikely events of this project Todd understands the frustration of the Government" but Todd is "unsure how" it can be held "accountable for submittals when the subcontractors involved either refuse to provide them or the field conditions preclude them from being done"); *id.* ("Because it did everything possible to respond to the difficulties on this project and suffered significant financial losses in an effort to rectify problems beyond its control, Todd believes the proposed unsatisfactory evaluation is unfair and not justified."). After reviewing Todd's comments, the contracting officer concluded that "[t]he additional documentation provided minimal information to overturn and/or warrant a change in rating. Todd Construction failed in complying with the terms and conditions of the contract related to Quality Control, Timely Performance, and Effectiveness of Management." *Todd*, 85 Fed. Cl. at 36; Ex. C to Pl.'s Supp. Br. (docket entry 18-4, Feb. 29, 2008). In August of 2006, Todd appealed the contracting officer's decision to Ms. Rita Miles of the Department of the Army, alleging that the Government (1) violated the applicable performance review procedures set forth in Army Corps of Engineers Regulation 415-1-17 and (2) arbitrarily issued evaluations unsupported by the facts. *Todd*, 85 Fed. Cl. at 36. Ms. Miles rejected that appeal, and the negative evaluations were then made part of the Construction Contractor Appraisal Support System ("CCASS"). *Id.*

On May 25, 2007, Todd filed a three-page complaint in this Court seeking judicial review of the decision of the contracting officer rejecting Todd's challenge to the unsatisfactory performance appraisals. Compl. (docket entry 1). Todd asserted in its complaint that (1) it had received two task orders; (2) the Corps had issued proposed unsatisfactory evaluations and Todd

had timely commented on them; (3) the Corps issued final evaluations that Todd timely appealed; (4) the appeal was rejected and the performance evaluations were posted in CCASS. Compl. ¶¶ 4-7.  Thus, Todd alleged, the Corps' actions were arbitrary, capricious, an abuse of discretion and not in accordance with law; the Corps exceeded its statutory and regulatory authority; the Corps failed to properly observe procedures required by law; and the Corps' actions were unsupported by substantial evidence and/or unwarranted by the facts.  Compl. ¶¶ 8-9.  Todd sought a judicial determination that the Corps' final decisions were unlawful and an order directing the Corps to remove the evaluations from CCASS.  Compl., Prayer for Relief.

On August 24, 2007, the Government moved to dismiss Todd's complaint, alleging that this Court lacked subject matter jurisdiction or, in the alternative, that the complaint failed to state a claim pursuant to Rule 12(b)(6).  With respect to the motion to dismiss for failure to state a claim, defendant noted that "Todd Construction's complaint fails because it does not present any claims or allege any facts in support of its claims," and that the "omission of any factual allegations . . . is fatal to its pleading under the standard set forth by the Supreme Court in *Bell Atlantic v. Twombly*," 550 U.S. 544, 553-64 (2007) (also citing *Taylor v. United States*, 73 Fed. Cl. 532, 546 (2006) and *Westover v. United States*, 71 Fed. Cl. 635, 640 (2006)).

On December 9, 2008, after multiple rounds of briefing, this Court determined that it possessed jurisdiction over plaintiff's complaint as properly presenting a claim within the scope of the CDA, and thus denied defendant's motion to dismiss the complaint pursuant to RCFC 12(b)(1).  *Todd*, 85 Fed. Cl. at 34.  The Court deferred any ruling on defendant's motion to dismiss pursuant to RCFC 12(b)(6), and requested further briefing on the question whether plaintiff's complaint stated a claim upon which relief could be granted.  The Court requested the parties to assume, solely for the purpose of this supplemental briefing, that Todd Construction would prevail upon the merits, and asked them to address a list of further questions.  *Id.* at 48-49.

The parties filed supplemental briefs stating their initial positions on these questions on March 6, 2009.  Defendant's Additional Briefing on Relief and Standard of Review ("Def.'s Br.") (docket entry 26); Plaintiff's Supplemental Brief in Response to Court's December 9, 2008 Opinion and Order ("Pl.'s Br.") (docket entry 25).  Simultaneous responses were filed on April 17, 2009.  Defendant's Response to Plaintiff's Supplemental Brief ("Def.'s Resp.") (docket entry 28); Plaintiff's Reply to Defendant's March 6, 2009, Supplemental Brief ("Pl.'s Resp.") (docket entry 27).

The question decided by the prior decision in this case was whether the allegations of the complaint generally fell within the Court's jurisdiction pursuant to the CDA, and the Court concluded that they did.  The matter presently before the Court is whether the *relief* the plaintiff seeks is within this Court's power to provide, and what standard of review the Court should apply in evaluating plaintiff's claims.

The parties agree that the Court possesses the authority to enter a declaratory judgment, and further that the second sentence of 28 U.S.C. § 1491(a)(2), which grants the court authority

to remand "any case within its jurisdiction" to the agency with "such direction as it may deem proper and just" applies in the present circumstances. Def.'s Br. at 8; Pl.'s Br. at 7. Because plaintiff contends that it relies solely on the declaratory and remand powers, this Court has no occasion to consider and does not decide whether any other remedy could be available. The parties also agree that the court should apply an "arbitrary and capricious" standard of review, despite the statutory instruction to review CDA claims *de novo*. 41 U.S.C. § 609. The parties differ in the reasoning they apply to reach this conclusion.

The Court again finds it helpful to review the relevant history as background against which to decide the present motion.

## II. Historical Background

For more than 100 years following the passage of the Tucker Act, contract disputes were generally settled within the procuring agency, and the three or four percent that remained unresolved proceeded to federal district court or the United States Court of Claims. Hearings before the Subcommittee on Administrative Law and Governmental Relations of the Committee on the Judiciary on H.R. 664, 95th Cong., 1st Sess. at 109 (Nov. 10 & 11, 1977) (hereinafter "November 1977 Hearing") (statement of Commissioner Louis Spector). In 1868, the Supreme Court concluded that an agency could appoint a board of commissioners to hear and decide disputes arising out of its contracts, and if the claimant voluntarily submitted itself to the board it could not thereafter seek additional relief from the Court of Claims. *United States v. Adams*, 74 U.S. (7 Wall.) 463 (1868). And where the contract specifically committed a matter to the discretion of the agency, the contracting officer's (in that case, the quartermaster's) determination could not be challenged in the Court of Claims absent a failure to "exercise the authority given him with an honest purpose to carry out the real intention of the parties." *Kihlberg v. United States*, 97 U.S. 398, 401 (1878). That is, if the agreement between the parties was that "the decision of an engineer, or other officer, of all or specified matters of dispute that may arise during the execution of the work, shall be final and conclusive, [then] in the absence of fraud or of mistake so gross as to necessarily imply bad faith, such decision will not be subjected to the revisory power of the courts." *United States v. Gleason*, 175 U.S. 588, 602 (1900).

It was not until World War I that the War Department established the first formal board of contract appeals. Joel P. Shedd, Jr., *Disputes and Appeals: The Armed Services Board of Contract Appeals*, 29 LAW & CONTEMP. PROBS. 39, 45 (1964). At about the same time, the Government began to use a "disputes" clause in its contracts setting forth a procedure for resolving disagreements, but a contractor displeased by the agency's resolution of its claim could nonetheless proceed to court. November 1977 Hearing at 109-10 (statement of Commissioner Louis Spector). Over time, these disputes clauses evolved to include language to the effect that the agency board's determination was final on "all disputes concerning questions of fact arising under this contract." Shedd, 29 LAW & CONTEMP. PROBS. at 49.

In *Wunderlich v. United States*, 342 U.S. 98 (1951), the Supreme Court held that "use of the word 'final' in the Government's disputes clause literally meant 'final' and that a contractor was thereafter precluded from seeking judicial relief under the Tucker Act." November 1977 Hearings at 110; *id.* at 180 (statement of Clarence T. Kipps) ("The system worked well until 1951."). That is, *Wunderlich* stated that in the absence of fraud, there was no judicial review of the agency's findings of fact made in resolving conflicts arising under the "disputes" clause of a government contract. The *Wunderlich* holding caused a furor, and Congress quickly liberalized the judiciary's ability to review findings of fact in the Wunderlich Act, Pub. L. No. 83-356, 68 Stat. 81 (1954) (codified as amended at 41 U.S.C. §§ 321, 322). The Wunderlich Act restored judicial authority to review an agency's factfinding alleged to be fraudulent, arbitrary, capricious, so grossly erroneous as to imply bad faith, or not supported by substantial evidence. Furthermore, the act precluded any contract provision making the agency's finding conclusive on any question of law, thus abrogating *United States v. Moorman*, 338 U.S. 457 (1950).

Some courts interpreted the Wunderlich Act to permit trials *de novo* on factual issues in the court, while others asserted that the court was limited to reviewing the administrative record. The Supreme Court addressed this issue in *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714 (1963), finding that "apart from questions of fraud, determination of the finality to be attached to a departmental decision on a question arising under a 'disputes' clause must rest solely on consideration of the record before the department." But the Supreme Court had earlier held that the Court of Claims possessed no remand authority. *United States v. Jones*, 336 U.S. 641, 670 (1949). The parties in *Carlo Bianchi* raised the inability of the Court of Claims to order a remand for further factfinding if the administrative record was not sufficiently complete to allow meaningful court review, and the Supreme Court stated:

> It is contended that the Court of Claims has no power to remand a case such as this to the department concerned, *cf. United States v. Jones*, 336 U.S. 641, 670-671, and thus if the administrative record is defective or inadequate, or reveals the commission of some prejudicial error, the court can only hold an evidentiary hearing and proceed to judgment. There are, we believe, two answers to this contention. First, there would undoubtedly be situations in which the court would be warranted, on the basis of the administrative record, in granting judgment for the contractor without the need for further administrative action. Second, in situations where the court believed that the existing record did not warrant such a course, but that the departmental determination could not be sustained under the standards laid down by Congress, we see no reason why the court could not stay its own proceedings pending some further action before the agency involved. *Cf. Pennsylvania R. Co. v. United States*, 363 U.S. 202. Such a stay would certainly be justified where the department had failed to make adequate provision for a record that could be subjected to judicial scrutiny, for it was clearly part of the legislative purpose to achieve uniformity in this respect. And in any case in which the department failed to remedy the particular

substantive or procedural defect or inadequacy, the sanction of judgment for the contractor would always be available to the court.

*Carlo Bianchi*, 373 U.S. at 717-18.  The Court of Claims therefore held that all it could do, in a case where the administrative record was incomplete, was to stay the proceeding pending the parties' return to the agency and further action by the agency board.  *Anthony Grace & Sons v. United States*, 345 F.2d 808, 812 (Ct. Cl. 1965), *see also United States v. Anthony Grace & Sons, Inc.*, 384 U.S. 424 (1966) (reversing attempt to remand case to trial division in lieu of remand to agency).

This was an awkward process, and the Chief Judge of the Court of Claims expressed the need for a more direct and expeditious method of remand.  Hearing on S. 1704 to Amend Title 28, United States Code, 1491, to Authorize the Court of Claims to Implement Its Judgments for Compensation, Subcommittee on Improvements in Judicial Machinery, Committee on the Judiciary, 90th Cong., 2d Sess., March 12, 1968 at 11 (statement of the Honorable Wilson Cowen, Chief Judge, United States Court of Claims) ("Now, I think it would be very helpful, and I think this legislation would clarify our right to remand, if we could expressly remand the case with specific directions to the Board which we feel we do not have the right to do now . . . . I think it would be helpful to [the boards] if we said 'We want you to find specifically what the facts are about this particular claim or cause of action.'").

In 1972, Congress amended the Tucker Act to provide the court authority to "remand appropriate matters to any administrative or executive body or official with such directions as it may deem proper and just," in "any case within its jurisdiction."  Pub. L. No. 92-415, 86 Stat. 652 (codified at 28 U.S.C. § 1491).  This was a non-controversial codification of the existing practice of "staying" a case pending further agency action, which in the context of government contracts was usually a finding of additional facts by an agency board of contract appeals.  Hearing Before Subcommittee No. 2 of the Committee on the Judiciary on H.R. 12979 and H.R. 12392, 92d Cong., 2d Sess. at 125 (March 1, 1972) (statement of Irving Jaffe, Deputy Assistant Attorney General); *Hoopa Valley Tribe v. United States*, 596 F.2d 435, 447 (Ct. Cl. 1979).

Shortly thereafter, the Court of Claims utilized this new power to remand a case to the Armed Services Board of Contract Appeals to determine whether the plaintiff had shown good cause for failing to file an appeal within the 30-day time limit: "In remanding the case, we do not mean to imply or suggest in any way that the Board should or should not allow the plaintiff a waiver of the time limit requirement.  This is a decision that the Board itself must make in the free exercise of its discretion."  *Maney Aircraft Parts, Inc. v. United States*, 479 F.2d 1350, 1354 (Ct. Cl. 1973).

The enactment of the CDA in 1978 allowed government contractors, for the first time, to bring their complaints regarding disputes "under" the contract directly to the court, rather than

first addressing them to an agency board of contract appeal.[1]  This creation of "direct access" jurisdiction necessitated a bifurcated standard of review.  When a contractor did not initially present his claim to an administrative board, this court's review is *de novo* (as it would have been at the board of contract appeals), while review after a board determination is conducted pursuant to a deferential standard similar to that contained in the Wunderlich Act.[2]  *Gregory Lumber Co. v. United States*, 9 Cl. Ct. 503, 514 (1986); 41 U.S.C. § 609; November 1977 Hearing at 134 (statement of Allen J. Joseph on behalf of the American Bar Association) ("This appears to us to be fair, since the contractor had the opportunity to obtain a *de novo* review of the facts in a court proceeding had he chosen his right of direct access.").  To facilitate these new "direct access" cases, the CDA required contracting officers to issue a written decision with reasons for the decision.  November 1977 Hearing at 136 (report of American Bar Association by Tim Coburn and David Anthony) (noting concern about possible "judicialization" of the contracting officer decisionmaking process).  The decision of a contracting officer and the "informal conference" (that is, review by the contracting officer's superior) are not "adjudications."  The contracting officer's decision is a "unilateral determination in the absence of an agreement between himself and his counterpart the contractor, and that furnishes the basis for taking it up to the superior

---

[1] A distinction then existed in the law between matters arising "under" the contract (that is, included within the contract's disputes clause) and matters that constituted a "breach"—defined as "a claim which is recognized under contract law as a basis for monetary relief against the Government, but no clause exists in the contract whereby the contract price could be increased or decreased to permit payment of such relief."  November 1977 Hearing at 84; *id.* at 110-111 ("Under the *Bianchi* ruling, judicial review is limited to the agency's record.  The agency's decision is final unless fraudulent or capricious or arbitrary or grossly erroneous or not supported by substantial evidence.  The court in a contract case where the 'disputes' clause is present cannot take any evidence or provide a trial. This stricture on the judicial remedy applies only to contract disputes 'arising under the contract.'  But so many clauses have meanwhile been fashioned and inserted in Government contracts to replace what would otherwise be breach of contract situations, that very few circumstances are construed as not 'arising under the contract.'  The procurement agencies continue to develop new clauses, including a proposed 'all-disputes' clause which would embrace all *breaches of contract*.  This would make the procurement agency the final judge of its own breach.").  In *United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966), the Supreme Court held that *Bianchi* applied to claims "under" the contract, but not to breach of contract.  The Commission on Government Procurement concluded that "the *Bianchi*, *Grace*, and *Utah* decisions have created an intolerable mess." November 1977 Hearing at 181 (statement of Clarence T. Kipps).

[2] After the passage of the CDA, the Wunderlich Act itself only applies to contracts of non-executive agencies or to contracts entered into prior to the effective date of the CDA. *Parker v. United States*, 77 Fed. Cl. 279, 287 (2007).  Although appeals from the boards of contract appeals are now taken directly to the Federal Circuit, 28 U.S.C. § 1295(a)(10), when the CDA was enacted in 1978, there was no separate appellate court, only the Court of Claims.

officers in the department for the purpose[] . . . to allow his superiors to correct obvious mistakes or misunderstandings." November 1977 Hearing at 93 (statement of Mr. Jaffe).[3]

The Court divines from this history that although the remand power developed well before the court's ability to hear either "direct access" complaints or nonmonetary disputes, it was always contemplated to include specific instructions to the agency to address itself to particular issues, especially to make specific findings of fact and to compile a complete record in support of the agency's determination. Furthermore, the decision of a contracting officer or his superior, unlike the decision of a board of contract appeals, is not an "adjudication" that is entitled to deference upon review by this Court. But where the parties' agreement allows the Government discretion to decide some factual issue, the exercise of that discretion should be reviewed only for its abuse.

### III.     Standard of Review

In considering a motion to dismiss under RCFC 12(b)(6), a court accepts all well-pleaded facts as true and draws all reasonable inferences in plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). Plaintiffs must, however, do more than recite the elements of a cause of action; they must make sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### IV.     This Court is Not Authorized to Award Equitable or Injunctive Relief Generally

The parties correctly agree that, as a general matter, this Court lacks authority to provide injunctive and equitable relief. *See Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997); *Wheeler v. United States*, 11 F.3d 156, 159 (Fed. Cir. 1993); *Doe v. United States*, 372 F.3d 1308, 1313-14 (Fed. Cir. 2004); *Lion Raisins, Inc. v. United States*, 51 Fed. Cl. 238, 244 (2001) ("[O]ur general jurisdiction under the Tucker Act does not include an action for 'specific equitable relief.'") (*quoting Carney v. United States*, 462 F.2d 1142, 1145 (1972)). Thus, the

---

[3] November 1977 Hearing at 103 (statement of Mr. Jaffe) ("Or if we don't have a board of contract appeals decision and only have a contracting officer's determination, we haven't had any adjudication. We haven't had any consideration necessarily of anybody who is above the two people who you might expect would be fighting more frequently, the contracting officer and the project foreman. Sometimes they get along fine and sometimes they don't. They can't be relied upon to resolve disputes. They can be relied upon to come to agreement, sometimes, but not to resolve disputes. That has to be done somewhere else along the line, and I think the upper levels of the procurement agency ought not to be excluded from that settlement. That is why I am in favor of the informal conference.").

plaintiff must identify some particular statutory provision permitting this Court to award the relief it seeks.[4]

## V.   This Court Possesses Authority to Enter a Declaratory Judgment

The Court previously observed that "it appears that because '[j]urisdiction is power to declare the law,' *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868), the presence of jurisdiction over this nonmonetary dispute pursuant to the CDA means that the Court possesses authority to provide declaratory relief in the present circumstances," although the Court requested further input and guidance from the parties on this issue.  *Todd*, 85 Fed. Cl. at 47.

In the supplemental briefing, the parties agreed that the Court may declare the rights of the parties.  Pl.'s Br. at 6-7; Def.'s Br. at 9 ("Assuming [Plaintiff] seeks purely declaratory relief . . . this Court possesses authority to issue that relief.").  The Federal Circuit has observed that in deciding whether declaratory relief is warranted, the Court should keep in mind the "appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999).

---

[4] There is no allegation of a pending procurement in which plaintiff's position may be adversely affected by the performance evaluation at issue here, and thus the case is unlike *Public Warehousing*, where the court enjoined the agency to comply with Federal Acquisition Regulation Subpart 42.15 (Contractor Performance Information).  *Public Warehousing Co. v. Defense Supply Center Philadelphia*, 489 F. Supp. 2d 30 (D.D.C. 2007) (noting that "DSCP has continued to receive requests for past performance information from other federal agencies who are considering PWC's bids for proposed federal contracts" but the agency had refused to provide past performance information); *Public Warehousing Co. K.S.C.*, No. 07-366 (Fed. Cl. June 13, 2007) (allowing agency to "indicate to other source selection agencies that a Department of Justice investigation of plaintiff is in process" but otherwise requiring DSCP to "provide objective data of plaintiff's performance of the contracts" consistent with the applicable regulations and prohibiting the agency from "refus[ing] or declin[ing] to provide performance data to other source selection agencies" or posting a performance assessment that did not comply with the court's temporary restraining order).  The Government successfully argued in that case that DSCP's refusal to provide a performance evaluation to the other agencies was "a violation of statute or regulation in connection with a procurement or a proposed procurement" within this court's bid protest jurisdiction.  *Public Warehousing*, 489 F. Supp. 2d at 36.  The statute providing this court's jurisdiction over bid protests, unlike the CDA, specifically grants authority to award declaratory and injunctive relief.  28 U.S.C. § 1491(b)(2) ("To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief . . . .").

Unlike a traditional matter of contract interpretation, a pure declaration on these facts would serve little purpose. For example, in *CW Government Travel, Inc. v. United States*, 63 Fed. Cl. 369, 387-90 (2004), Chief Judge Hewitt considered whether this Court possessed jurisdiction to enter a declaration of rights regarding whether the contract entitled the contractor to be the exclusive service provider. In such a case, a legal opinion on what the terms of the contract mean would be beneficial to resolve any "live dispute" between the parties. *CW Government Travel* primarily involved the question whether the possible future transfer of business to another contractor presented a "live dispute" as opposed to a hypothetical future dispute. Likewise, in *Alliant* and *Malone* the questions were, respectively, whether an option exercise and a termination for default were valid. These questions could be answered with a "yes" or "no," and the consequences flowing from that answer did not require further intervention from a court or board. *Alliant*, 178 F.3d at 1271 ("If the court had accepted Alliant's argument on the merits, it would have held that Alliant had no obligation to perform under the option clause. That ruling, unless stayed, would also have preempted any disputes clause performance obligations."); *Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988) ("If the default was proper, the contractor is liable for the government's excess reprocurement costs. If the default was improper, the government is liable for the contractor's termination for convenience costs.").

In this case, we have a "live dispute"—a disagreement over, *inter alia*, whether the performance evaluation is fair and accurate. It is not clear, however, that a declaration of rights will resolve that dispute. If the Court possesses only the power to say "no, the performance evaluation is not fair and accurate," but no authority to order any other action, the plaintiff would be essentially no better off than it is today. Even if the Court could say "the performance evaluation should be set aside," but had no power to require any entity to take any action on that conclusion, the declaratory relief would be meaningless. Thus, although the Court possesses jurisdiction to declare the rights of the parties, declaratory relief alone would be insufficient to provide the plaintiff with any of the relief it seeks. Defendant is correct that a mere declaration "will not necessarily resolve the dispute" because it would neither cause the performance evaluation rating to be changed nor cause the evaluation to be removed from CCASS. Def.'s Resp. at 9.

**VI.  This Court Possesses Jurisdiction to Remand with "Proper and Just" Directions**

As noted above, the parties agree the Court is statutorily authorized to remand this case to the agency (in this case, the United States Army Corps of Engineers) with "proper and just" directions. Plaintiff would shoehorn into the Court's ability to remand with "proper and just" directions authority for the Court to make essentially any order requiring the agency to take any action, including setting aside the performance evaluation or removing it from CCASS. Pl.'s Br. at 7. Defendant counters that although the Court may remand, it may "say nothing more than that [Plaintiff] is entitled to a fair and accurate evaluation" and thus any remand with such a direction would not provide "meaningful guidance to the agency." Def.'s Resp. at 6.

The Court's review of the history and case law reveals that the truth lies somewhere in between these two extremes. The Court may, and does, remand to agencies with directions more specific than merely restating the terms of the right at issue. The Court does not, however, view the "proper and just" language as conferring unlimited authority.

The court has utilized the remand power in a variety of ways. It has, for example, remanded for a new hearing and new decision, *Rothman v. United States*, 219 Ct. Cl. 595 (1979), *Black v. United States*, 25 Cl. Ct. 268 (1992); required a reconstitution of the deciding board for a determination on remand whether to hold a new hearing, *Gulf & Western Indust. v. United States*, 671 F.2d 1322 (Ct. Cl. 1982); directed the agency to hold a hearing or explain why it did not do so and consider a subsidiary board's findings of "error and injustice" or explain why it did not do so, *Lopez-Velazquez v. United States*, 69 Fed. Cl. 64 (2005); *see also Doe v. United States*, No. 08-246C, 2009 WL 260967 (Fed. Cl., Jan. 30, 2009) (remanding due to agency's insufficient explanation of its actions); issued a list of factual questions for the agency board to decide upon remand relating to an issue not raised before the board, *Harris v. United States*, 8 Cl. Ct. 299 (1985), *Baird v. United States*, 71 Fed. Cl. 536 (2006); required the agency to "provide[] adequate opportunity for cross-examination" of a witness and then to make new findings of fact, including a list of specific issues upon which findings were required, *Doty v. United States*, 24 Cl. Ct. 615 (1991), *remanded again,* 27 Fed. Cl. 598 (1993); required compliance with a regulation mandating a written record and listed specific matters on which factual findings were necessary, *Simons v. United States*, 25 Cl. Ct. 685 (1992); provided a legal interpretation of regulatory requirements and remanded for determination of eligibility consistent with those requirements, *Davis v. United States*, 46 Fed. Cl. 421 (2000); and remanded for an evaluation of a specific portion of the offeror's proposal, *Emerald Coast Finest Produce Co. v. United States*, 75 Fed. Cl. 549 (2007); *Knowledge Connections v. United States*, 76 Fed. Cl. 6 (2007).

The common theme running through these cases is that the remand does not mandate a particular factual determination, but directs the agency's attention to matters the court believes require further action to create an adequate record for the agency's decision. *See* RCFC 52.2. Further, "[a]ny remand must be consistent with the statutory scheme under which the agency has taken action." *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003) (concluding that remand requiring agency "to make a nexus finding went beyond its authority" because the statutory scheme did not require a nexus finding but permitted a different procedure). That is, "[n]o matter how well or expeditiously a court might be able to make a determination, the controlling consideration is whether, by doing so, the court would intrude upon a province that does not belong to it." *Diversified Maintenance Sys. v. United States*, 74 Fed. Cl. 122, 126 (2006). But "even when the statutory requirements are met, there are circumstances in which the court may require an explanation." *Richey*, 322 F.3d at 1327.

The Court thus agrees with defendant that the power to remand with "proper and just" instructions "does not trump the [general] prohibition on injunctive relief." Def.'s Resp. at 8. The Court cannot agree with plaintiff's assertion that the Court may simply disregard the limitations on its injunctive authority by construing an injunction as a "proper and just" direction.

The Court disagrees, however, with defendant's contention that the "directions" accompanying the remand power are limited to merely restating the terms of the requirement at issue. The Government argues that a remand "would serve a useful purpose, as Todd Construction would receive a new determination as to whether the evaluation was fair and accurate and the agency would be provided another opportunity to provide Todd with a fair and accurate evaluation if the reviewing official's determination that the original evaluation was fair and inaccurate [sic] was improper." Def.'s Br. at 10. Although defendant's general sentiment is correct, its interpretation of the scope of "proper and just" directions is too narrow. In the event that the Court finds procedural deficiencies or an unfair evaluation, the Court should use its power to issue a declaratory judgment to assist the agency, on remand, to address the identified concerns. John E. McCarthy & Adelicia R. Cliffe, *Revisiting the Past: Todd Construction, Inc. v. U.S. and Judicial Review of Past Performance Evaluations, Part II*, BNA'S FEDERAL CONTRACTS REPORT (March 9, 2009) ("[I]t makes . . . little sense for the court simply to inform the agency that they got it wrong and to go back and try again. . . . [I]t is incumbent on the court to provide the agency sufficient guidance for the agency to correct its flaws the second time around.").

VII. **Although an Agency's Compliance With Required Procedures in Preparing a Performance Evaluation Is Subject to *De Novo* Review, the Assignment of a Particular Rating Warrants Deferential Review**

The defendant argues, in part, that a deferential standard of review should apply to CDA claims regarding past performance evaluations because the statutory scheme allows appeal one level above the contracting officer, and that decision should be reviewed with the deference due to a board of contract appeals.[5] Def.'s Br. at 15 ("[T]he Court must distinguish between what it has termed the 'final decision' of the deciding contracting officer on Todd Construction's appeal and the determination of the reviewing official on the application. In order to determine whether the reviewing official abused his discretion, the deciding contracting officer does not conduct a new evaluation and neither should this Court."). That argument meets with some statutory difficulty, in that Section 609 states that review of any decision under § 605 should be *de novo*, and § 605 provides for alternative dispute resolution mechanisms which would appear to include the decision of a reviewing officer within the agency. 41 U.S.C. §§ 605, 609; *see also* November 1977 Hearing at 103 (statement of Mr. Jaffe). The plaintiff asserts that the APA standard of review applies because it is "logical" that the Court would apply the same standard as in bid protest cases.[6] Pl.'s Br. at 11; Pl.'s Resp. at 6. That is, both parties assert that an arbitrary and capricious review is required, though they differ in their reasoning. The Court reaches its conclusion by neither of these proposed routes.

---

[5] The review of a decision of the board of contract appeals would be conducted by the Federal Circuit. *See* n.2, *supra*.

[6] Plaintiff's position is simply incorrect. The APA standard of review applies to bid protests because a statute mandates that review, 28 U.S.C. § 1491(b)(4), while a statute mandates *de novo* review for CDA claims such as the one presented here. 41 U.S.C. § 609(a)(3).

The Court reads the pertinent regulatory provisions as creating two distinct sets of requirements. One is strictly procedural: there are a number of acts that are not within the discretion of the contracting officer. She *must* prepare an evaluation, using a particular form, at a particular time. Where an unsatisfactory evaluation is contemplated, she *must* confer with the contractor, send a notice of intent to issue an unsatisfactory interim rating, allow written comments by the contractor, include them in the report, *et cetera*.[7] The Court is fully capable of reviewing whether these requirements were satisfied or not on a *de novo* basis. The Court possesses the capacity to determine whether a conference was held or whether a notice of intent to issue an unsatisfactory rating was sent in a timely fashion.

---

[7] The Federal Acquisition Regulation, as applicable here, mandates, among other things, that the "contracting activity shall evaluate contractor performance" using Form SF 1420 for contracts of more than $550,000 or, if the contract was terminated for default, more than $10,000. FAR § 36.201(a)(1); *see also* Army Corps of Engineers Regulation 415-1-17 (March 26, 1993) ("ER 415-1-17") (extending requirement for performance reports to contracts of $100,000 or more, or, if any element of performance is unsatisfactory or outstanding, $25,000).

The report "shall be prepared at the time of final acceptance of the work, at the time of contract termination, or at other times, as appropriate, in accordance with agency procedures." FAR § 36.201(a)(2). The Corps mandates that the final report "shall be prepared within 60 days of substantial completion of the work or at the time of contract termination" and that "[a]n interim performance evaluation report shall be prepared for incomplete contracts when a contractor's performance is generally unsatisfactory" for three months or more. The Corps regulations specify a number of steps to be taken, beginning with "notifying a contractor at the preconstruction conference of the performance elements against which his performance will be evaluated." ER 415-1-17.

"When unsatisfactory performance is noted, the contractor will be called into a conference to discuss problem areas and their resolution," and that meeting must be memorialized in a "Memorandum of Record." *Id.* If no improvement is observed, a notification of the intent to issue an unsatisfactory interim performance evaluation will be sent, and "[i]t is mandatory that the contractor be given the opportunity to meet with the CO prior to issuance of the unsatisfactory rating." *Id.* The contractor will be given at least 14 days to respond to the notification, and if it responds "all written comments will be included in the report." *Id.* Final performance evaluations "are processed in the same manner." *Id.*

If performance is unsatisfactory, the "contractor shall be advised in writing that a report of unsatisfactory performance is being prepared and the basis for the report. If the contractor submits any written comments, the evaluating official shall include them in the report, resolve any alleged factual discrepancies and make appropriate changes in the report." FAR § 36.201(a)(3); ER 415-1-17 ("If the evaluating official concludes that a contractor's overall performance was unsatisfactory, the contractor shall be advised in writing that a report of unsatisfactory performance is being prepared and the basis for the report. The contractor must be afforded the opportunity to submit written comments, which should be addressed and included in the report."). The "head of the contracting activity shall establish procedures which ensure that fully qualified personnel prepare and review performance reports." FAR § 36.201(a)(4).

But the second issue is a different matter. The regulations contemplate that the contracting officer and the reviewing officer will produce a performance evaluation that is "accurate" and "fair."[8] That is, although the issuance of a performance evaluation that is "accurate and fair" can be expected "as a matter of right" by the contractor, the determination of the proper rating (*i.e.*, what is "accurate and fair") is a matter for the agency to decide within broad parameters.

The choice of a particular rating to assign is necessarily subjective and is within the sole purview of the Government. Thus, the production of an accurate and fair performance evaluation rating requires the exercise of the contracting officer's judgment, and "when the parties to a contract vest one party with the discretion to make a critical factual determination under the contract, this court narrowly reviews that determination to ascertain whether that discretion was arbitrarily or capriciously exercised." *Reservation Ranch v. United States*, 39 Fed. Cl. 696, 714 (1997) (concluding judgment that timber harvesting would jeopardize spotted owl was not arbitrary); *see also Burnside-Ott Aviation Training Ctr. v. Dalton*, 107 F.3d 854, 859 (Fed. Cir. 1997) ("The deference the Board must give the CO and [reviewing officer] comes not from the CDA directly, but from interpretation of the contract terms, an interpretation accomplished *de novo* pursuant to the CDA."); *Hayes v. United States*, 43 Fed. Cl. 735, 740 (1999) (when contract vests one party with discretion to suspend, the "court reviews such action to determine whether the discretion was arbitrarily or capriciously invoked").

In the bid protest context, the assignment of a past performance rating is reviewed "only to ensure that it was reasonable and consistent with the stated evaluation criteria and applicable statutes and regulations, since determining the relative merits of the offerors' past performance is primarily a matter within the contracting agency's discretion." *Clean Venture Inc.*, 2000 CPD ¶ 47 (March 6, 2000); *Weidlinger Assocs., Inc.*, 2007 CPD ¶ 91 (May 7, 2007) ("Regarding the relative merits of offerors' past performance information, this matter is generally within the broad discretion of the contracting agency, and our Office will not substitute our judgment for that of the agency. A protester's mere disagreement with the agency's judgment does not establish that an evaluation was improper."). The decision by a contracting officer to assign a particular performance rating in the post-performance phase is similarly discretionary. *Cf. Serco Inc. v. United States*, 81 Fed. Cl. 463, 485 (2008) ("[W]hile the agency would have had considerable discretion in evaluating plaintiffs' past performance had a proper process been used to develop performance information, it did not have the discretion to employ a survey system that did not generate verifiably accurate and relevant past performance information."). The purpose

---

[8] "Each performance report shall be reviewed to ensure that it is accurate and fair." FAR § 36.201(b); ER 415-1-17 ("Each performance evaluation shall be reviewed for accuracy and fairness by an individual having knowledge of the contractor's performance at a supervisory level above that of the evaluating official."); *see generally* United States Government Accountability Office, *Better Performance Information Needed To Support Agency Award Contract Decisions* (April 2009).

of this court's *de novo* review is to provide the same level of scrutiny for a "direct access" action in this court as would be provided in an appeal to the board of contract appeals, and both the boards and the court will defer to an agency's resolutions of matters within its discretion. *De novo* review at the board level, if it occurred, would not provide a contractor with a right to any particular rating, but instead would ensure that the Government had followed the required procedures and did not abuse its discretion in assigning the rating the contractor received.

Despite the discretionary nature of the assignment of a performance evaluation rating, the exercise of that discretion must be reasonable. Thus, the court will review the "accuracy" and "fairness" of a performance evaluation rating to determine whether "the discretion employed in making the decision is abused, for example, if the decision was arbitrary or capricious." *Burnside-Ott*, 107 F.3d at 859-60; *John Reiner & Co. v. United States*, 325 F.2d 438 (Ct. Cl. 1963) (contracting officer's decision to terminate "in the best interests of the United States" within contractual authority is conclusive in "the absence of bad faith or clear abuse of discretion"); *Appeal of Thomas W. Yoder Co.*, 74-1 BCA ¶ 10424 (VABCA Jan. 25, 1974) ("We have heretofore followed the rule that where deviations or substitutions are proposed under contract provisions making acceptance dependent upon the Contracting Officer's judgment, it is necessarily implied that the exercise of the Contracting Officer's judgment must not be unreasonable, arbitrary or capricious . . . ."). Thus, the Court agrees with defendant that it would be improper for the Court to conduct a new evaluation, Def.'s Br. at 16, and with, respect to whether the performance evaluation was fair and accurate, that the contractor is entitled only to a determination whether the agency's choice of a "fair and accurate" rating constituted an abuse of discretion. Def.'s Resp. at 6-7.

**VIII.   Plaintiff's Complaint Fails to State A Claim Upon Which The Court Can Grant Relief**

The plaintiff's complaint requests the following relief:

(a)   A judicial determination that the Corps' final decision is unlawful and should be set aside;
(b)   An order directing the Corps to remove the final performance evaluations from CCASS; and
(c)   For such other relief as this Court deems proper, including interest, costs and attorneys' fees . . . .

Complaint, Prayer for Relief.

For the reasons set forth above, even if plaintiff would eventually prevail in its contentions on the merits, the Court does *not* possess authority to provide the relief requested in paragraphs (a) and (b). Given the remedial powers relied upon by plaintiff, the Court may issue a declaration of rights and may remand to the contracting officer with "proper and just" instructions, but those instructions cannot include a direction that the agency reach a particular conclusion on the merits of the performance evaluation. Thus, this Court does not possess the

ability, under the remand clause of § 1491(a)(2), to order that the Corps set aside its final evaluation or remove it from CCASS.

Under its remand authority, this Court can review the procedural propriety of the manner in which the performance evaluation was determined and, if it finds inadequacies, remand to the agency with a description of the procedural deficiencies found by the Court and direction as to how to remedy them. The Court can also review whether the agency abused its discretion in determining that the assigned performance rating was "accurate" and "fair" and, if it finds an abuse of discretion, can remand to the agency for further consideration. The Court contemplates that such a remand would involve a "proper and just" direction that the agency re-examine its rating and either build a proper record for the rating it assigned or assign a rating that is supported by the record. The Court does not possess the power to mandate that upon remand the agency assign a particular rating, withdraw a rating, or remove a rating from the prescribed database.

To the extent that plaintiff's complaint requests either a declaration that the Corps' final decision is unlawful, or that an extremely broad reading of "such other relief as this Court deems proper" can be construed to include a request for remand to the agency, the complaint in this case does not "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009); Compl. (docket entry 1, May 25, 2007). Covering a mere three pages, the complaint asserts that Todd possesses rights arising out of pertinent "rules and regulations," ¶ 2, that Todd received unsatisfactory performance evaluations that it timely appealed, ¶¶ 5-7, and that therefore:

   a.   The Corps' actions were arbitrary, capricious, an abuse of discretion, and not in accordance with law;
   b.   The Corps exceeded its statutory and regulatory authority;
   c.   The Corps failed to properly observe procedures required by law; and
   d.   The Corps' actions were unsupported by substantial evidence and/or unwarranted by the facts.

*Id.* ¶ 9. The Supreme Court has rejected the notion that a "wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal quotations omitted). Conclusory assertions that an unsatisfactory evaluation was an abuse of discretion or that procedures were not followed constitute a "formulaic recitation of the elements of a cause of action" that does not suffice to survive a motion to dismiss. *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."); *accord Ashcroft*, 129 S. Ct. at 1959 (observing that the "relevant question is whether, assuming the factual allegations are true, the plaintiff has stated a ground for relief that is plausible"). The complaint does not contain sufficient factual allegations to suggest entitlement to remand, even if the complaint is read broadly enough to

request such relief. *Levine v. United States*, 453 F.3d 1348, 1350 (Fed. Cir. 2006) (observing that motion to dismiss should be granted when plaintiff does not plead facts "that would warrant the requested relief").

## CONCLUSION

Ordinarily, for the reasons enumerated above, the Court would grant defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Such a dismissal would operate as an adjudication on the merits. *See* RCFC 41(b). In this case, however, the Court is concerned that such an outcome at this stage would cause plaintiff, whose complaint was filed in May of 2007, to be unfairly victimized by scrutiny of its complaint in light of the Supreme Court's recent explanation of the pertinent standards in *Twombly* and *Ashcroft*. In addition, this Court's decision will, one hopes, clarify the sources and extent of the Court's authority to review performance evaluations, the scope of and standards applicable to such review, and the remedies available in this Court under its remand power when a contractor successfully challenges a performance evaluation.

In light of these factors, the Court will defer a final ruling on defendant's 12(b)(6) motion in order to give the plaintiff, if it is so inclined, an opportunity to file a motion for leave to file an amended complaint. **Any such motion shall be filed no later than August 12, 2009**. In the meantime, the Court **ORDERS** that all other proceedings in this action shall be stayed. In the event plaintiff does not file a motion for leave to file an amended complaint by August 12, 2009, the Court will grant the defendant's 12(b)(6) motion.

**IT IS SO ORDERED.**

      s/ George W. Miller
GEORGE W. MILLER
Judge